The State of Missouri, to use of Neal, v. Saline County Court.

THE STATE OF MISSOURI, TO USE OF J. B. NEAL, Plaintiff,
v. SALINE COUNTY COURT, Defendant.

1. *Railroad — Saline county railroad bonds issued without popular vote speci-
fying the amount — Innocent holders protected.*—Under the act of January
22, 1861 (Sess. Acts 1860–1, p. 455), the County Court of Saline county could
issue railroad bonds for the Lexington & St. Louis Railroad Company only
upon popular vote "specifying the amount" to be issued. (45 Mo. 242.)
And the company, being a direct party to the bonds, could enforce their pay-
ment only after such vote had been taken. But when the question of the
issue of the bonds had been submitted to vote, and a majority had voted for
the issue, and the bonds on their face showed a compliance with the act,
and said bonds had been negotiated by the county in the construction of the
road, purchasers would not be required to look further, and would be entitled
to *mandamus* to enforce the payment of said bonds, even though the vote in
fact failed to "specify the amount" as required by law:

The general rule is that where the statute gives authority to contract a
debt on specified conditions, their performance is necessary to support the
authority; and in a direct proceeding to prevent the consummation of the
contract, the substantial performance of every radical condition may be
insisted on. But when the contract is completed, and the rights of innocent
third parties supervene, the rule is relaxed. And in such case, where an
attempt has been made to comply with the condition specified, and the bond
or other instrument indicates a compliance therewith, the innocent purchaser
will be protected.

## Petition for Mandamus.

*Amos Green & T. A. Green*, for plaintiff.

The bonds are duly issued and signed by the presiding justice
of the County Court, and attested by the clerk under the official
seal of the county, and recite on their face that they are issued
under and pursuant to the provision of the act of the Legislature,
reciting its date, etc., and having passed into the hands of inno-
cent purchasers for a valuable consideration, it is too late to set
up or show informality in the issuing of them, or that the vote
was not had in conformity with the requirements of the law.
The bonds on their face import absolute verity, and the county
and district are estopped from setting up any failure on their part
to comply with the law. (Bissell *et al.* v. The City of Jeffer-
sonville, 24 How. 287.)

The State of Missouri, to use of Neal, v. Saline County Court.

*J. P. Strother*, for defendant.

No one could be an innocent purchaser, because in this case the bonds on their face referred to the special law and to the records of the County Court.

A purchaser was bound to look to both, and the records showed that the authority had not been pursued, and that the bonds were therefore invalid. (Sess. Acts 1860–1, p. 455; 2 Redf. Railw. 403; 27 Penn. 389; 23 N. Y. 449; 24 How. 298; 45 Mo. 246–8; Marsh v. Supervisors of Fulton County, 10 Wall. 676.)

It does not appear that the County Court of Saline county issued these alleged bonds. They were executed by the presiding justice and clerk without authority.

Even if one could be an innocent purchaser in such a case as this, the burden of proof would be on plaintiff, and he has failed to show his innocency by satisfactory evidence.

BLISS, Judge, delivered the opinion of the court.

In the State on the relation of the Lexington & St. Louis R. R. Co. v. Saline County Court, reported in 45 Mo. 242, an application was made for a *mandamus* compelling defendant to deliver to the relator certain bonds, and to assess taxes to pay the interest upon other bonds that had been delivered. The application was denied upon the ground that the law authorized the issue of the bonds only upon a vote of the people of the portion of the county interested, "specifying the amount" to be issued; that the vote did not specify the amount, and that the records of the court showed the defect. We did not say what might have been our opinion had the bonds that were issued gone into circulation and been in the hands of innocent holders.

The present relator represents that $1,200 of those bonds had been actually negotiated by the county in the construction of their road, and have been purchased and are now held by him, and he asks for a *mandamus* to compel the County Court to levy a tax to pay the same. The record shows the same state of facts

exhibited in the former case, with the addition only of the trans-
fer of the bonds and their purchase by the relator.

The liability of municipal and of *quasi* corporations for the
acts of their lawful agents in issuing negotiable bonds has been
considered by this court upon various occasions, and the subject
was elaborately discussed at our last March term in Steines v.
Franklin County, *ante*, p. 167. The doctrines there affirmed
have always been recognized by us, and are founded upon the
broadest principles of justice. These bonds are treated like
negotiable commercial paper, and after they have been trans-
ferred in the usual course of business the authority to execute
and issue them is almost the only question open to consideration.
The question of authority necessarily arises from the fact that
they are executed by agents, and we have only to consider what
constitutes authority.

The general rule is that when the statute gives authority to con-
tract a debt upon specified conditions their performance is neces-
sary to support the authority; and in a direct proceeding to pre-
vent the consummation of the contract, the substantial perform-
ance of every radical condition may be insisted on. But when the
law imposes such a condition upon the exercise of the power as a
submission to a vote of the people, and an attempt has been made
in good faith to comply with the condition, and it has been sup-
posed by all parties to have been regularly complied with, the
bond upon its face showing a compliance, strangers should not
be required to look further. This class of bonds are negotiated
by delivery; they go into market in distant States or foreign
countries; and if the holder were required to show the regularity
of all the proceedings, their negotiability would be greatly im-
paired or altogether destroyed, and the injustice to one who had
received them, trusting to the truth of the recitals, would be very
great. The purchaser in an eastern market may be satisfied as
to the law—that the matter was submitted to the people, and that
the county authorities acted upon that submission; but of the
regularity of all the proceedings he cannot be advised without
sending to a distant State and perhaps an obscure county, em-
ploying counsel to examine the records and poll-books, and then

he may be wrongly advised. The law throws no such burden upon him. He has trusted and he has a right to trust to the decision of the proper authorities, made when the bonds were issued, as to the regularity of the proceedings. Such decision radically differs from a naked usurpation of authority, and, as to strangers who trust to it, ought to bind the county.

Judge Nelson, in the case of Knox County v. Aspinwall, 21 How. 545, says : "The purchaser of the bonds had a right to assume that a vote of the county, which was made a condition to the grant of power, had been obtained from the fact of the subscription by the board to the stock of the railroad company and the issuing of the bonds." So broad a statement was uncalled for in the case then under consideration, and is inconsistent with our holding in Steines v. Franklin County, *supra*, and is also contrary to the decision in Marsh v. Fulton County, 10 Wall. 676. If the holder is to assume the vote from the mere issuing of the bonds, then the county would be prohibited from showing that there was no such vote, and county agents would be enabled to commit the grossest frauds by issuing them without any authority whatever; for the real authority comes from the people, and the statute only enables the people to bestow it.

When these proceedings were formerly under review, the application was first for an order upon the County Court to issue bonds to the railroad company that had been withheld; and, second, to provide for the payment of those in the hands of the company. These orders were refused because of the irregularity of the submission and vote. In view of such irregularity, it might have been the duty of the county authorities to refuse to proceed further; certainly this court would not compel the consummation of an erroneous proceeding. And so with the company. It was the payee, the whole proceedings were under the eye of its officers, and it was their duty, as representing the principal party in the transaction, to see whether the law had been complied with. The company stood in the relation of the original holder of negotiable paper who is advised of a want of consideration or other fact that would affect its validity.

In considering the subject reference was had to the case of

Mercer County v. Penn. & Erie R.R. Co., 27 Penn. St. 389, and we are now told that that case was reversed by Mercer County v. Hackett, 1 Wall. 83. This is a mistake. The remarks of the judges in the two cases may be inconsistent, but one is not a review of the other, and the points decided are consistent with each other. The former case was similar to the one in whose support it was cited; the bonds had not been negotiated, and in a direct proceeding the court enjoined their negotiation in consequence of irregularity in the action of the body who had power to confer the authority. The latter was a suit brought by an innocent holder of some of the bonds which had been negotiated, and the court sustained his claim upon very broad grounds, it is true, yet the actual decision was consistent with the former case, and consistent with our holding in 45 Mo.

In the case at bar we are to consider the question whether the submission to the popular vote, as provided by the statute, was so defective as to amount to no submission at all, or whether it was an error or irregularity of which the county authorities should have taken notice, but which — the election having been passed upon and approved by them — should not affect strangers. I am of opinion that as to those who have advanced their money on the faith of the action of such authorities, the townships interested in the railroad are concluded. A submission was had; a majority voted for the railroad, and there does not appear to have been any actual misunderstanding as to the object of the vote; no fraud is claimed; the County Court ignored the irregularity and issued the bonds; a few of them came into the relator's hands for value. Now, in all honesty and fairness, should he suffer from the blunders of the court? Clearly not; but if there is any loss it should fall upon those who authorized the court to act for them, though the authority was more general and indefinite than the law contemplated.

It is said that the record showed the irregularity. This is true, and doubtless the equity of the relator would be stronger had it been otherwise. But, practically, it makes but little difference. Purchasers would ordinarily only inquire whether the law authorized the vote, and whether a vote had been taken. It is

very seldom that they inspect the record, or, if they should do so, that they would be able to detect the error. When these bonds were negotiated, it seems not to have been discovered by any one, even by those in charge of the record, and who participated in the proceedings; and it would be altogether wrong to punish the relator for not having found it out.

We are referred by respondent to the case of Marsh v. Fulton County, 10 Wall. 676, recently decided in the Supreme Court of the United States. The opinion is a clear one, and contradicts in effect the *dicta* of the judges in several of the other cases, and places the validity of county bonds upon satisfactory grounds. The law of Illinois authorized counties to subscribe to the capital stock of railroad companies, and pay for the same in county bonds, provided such subscription was previously sanctioned by a majority of the qualified voters of the county. The board of supervisors of Fulton county, answering to our County Court, submitted the question to the voters, whether the county should subscribe $75,000 to the capital stock of the Mississippi & Wabash Railroad Company, and, after the election, ordered the clerk to subscribe the stock and issue the bonds. Subsequently the Legislature changed the charter of this company, separated the road into three divisions, and authorized the stockholders in each division to elect separate boards, who should each manage its own division. After this separation the clerk made the subscription to the central division, and the court held that this division was a different corporation from the one to whose stock the board of supervisors, under the authority of the election, had ordered him to subscribe, and that the subscription was not authorized by the vote. It was a case where the people had authorized a subscription to the capital stock of one company, and no authority whatever was given to subscribe to that of another — an absence of authority, and not an irregularity in granting it.

The other judges concurring, a peremptory *mandamus* will issue.