## THE DETROIT, EEL RIVER, AND ILLINOIS RAILROAD CO. ET AL. *v.* BEARSS ET AL.

RAILROAD.—*Appropriation to.—Petition.—Notice.*—A petition to the board of commissioners of a county to make an appropriation of money, by levying a special tax, to aid in the construction of a railroad, and the notices of election on the subject of the proposed appropriation, must specify the amount of money to be appropriated.

SAME.—*Per Centum of Taxables.*—A certain per cent. on the taxable property of the county is not a specific amount. WORDEN, J., dissented.

SAME.—*Time of Levy.*—The statute (3 Ind. Stat. 389) providing that the board of commissioner shall levy a special tax to aid in the construction of a

The Detroit, Eel River, and Illinois Railroad Company *et al. v.* Bearss *et al.*

railroad, at their regular June session, is mandatory, and a levy at any other time is void.

SAME.—*Forfeiture.*—Said statute provided that "a failure on the part of the railroad company to commence work upon the railroad in said county within one year from the levying of such special tax," etc., "shall forfeit the rights of such company to such donation."

*Held,* that the railroad company must commence work in good faith, with the honest purpose of constructing the road within a reasonable time, taking into consideration the extent and character of the work to be done; and, that to do work manifestly to evade forfeiture, is not "to commence work" within the meaning of the statute.

SAME.—*Election.*—*Registry Law.*—*Repeal of Statute.*—Where the statute under which an election was held provided, that the last preceding registry of voters should govern, and prior to the day of election, the law requiring a registry was repealed;

*Held,* said election being held without regard to said registry, that it was a valid election.

SAME.—*Ballot.*—Where the statute prescribed that the ballots used in voting upon the question of an appropriation by a county or township, to aid in the construction of a railroad, should contain the words, "for the railroad appropriation;" and, at the election, a large portion of the ballots cast and counted contained only the words "for the railroad;"

*Held,* that the casting and counting of such ballots was an irregularity which would not affect the validity of the election.

SAME.—*Notice.*—*Evidence.*—*Sheriff's Return.*—The certificate of the sheriff that he has posted notices of election in ten public places in the township, is not defective for not specifying the places, and such certificate is *prima facie* evidence that notices have been posted in ten public places in said township. If, in fact, notices of an election be not posted in ten public places, as prescribed by the statute, the election will be invalid.

APPEAL from the Miami Circuit Court.

BUSKIRK, C. J.—The appellees filed their complaint in the court below, against the appellants, to enjoin the collection of a tax levied in Jefferson township, Miami county, Indiana, in pursuance of a vote of the citizens of said township, to aid in the construction of the Detroit, Eel River, and Illinois Railroad through said township. A temporary injunction, restraining the collection of said tax, was granted by the court below, from which this appeal is taken. The following are the reasons set out in the complaint, why the collection of the said tax should be enjoined:

1st. That neither the petition, which was presented to the

board of commissioners, nor the notice issued by the auditor, properly specified the amount to be appropriated by said township to aid in the construction of the said railroad.

2d.   That no legal notice was given of the said vote, or of the time and place of holding said election.

3d.   That the certificate of the sheriff as to the posting up of said notices of the said election in the said township was defective, because it did not specify the places at which he posted them, so that it could be ascertained whether they were public places.

4th.   That the notices were not posted up in ten public places in said township.

5th.   That there was a large portion of the ballots which were cast and counted in favor of said appropriation, on which were written, "For the railroad," instead of "For the railroad appropriation."

6th.   That there was no registry of the qualified voters of said township at said election, nor was the last preceding registry before the said board of election.

7th.   That the tax was levied in July, 1871, when it does not appear that there was a legally called session of the board, and when the act of May 12th, 1869, required that such tax should be levied at the regular June session of the board.

8th.   That no work had been done in the said township in the construction of the said road within one year from the time of levying the special tax.

We will dispose of the objections urged in the order in which they are stated.

Did the petition specify the amount of money which was to be appropriated to aid in the construction of said road? The amount asked for in the petition, and that stated in the notice, was "two per cent. upon the taxables of said township." The first section of said act reads as follows:

"SECTION 1.   *Be it enacted by the General Assembly of the State of Indiana,* That whenever a petition shall be presented to the board of commissioners of any county in this State,

at any regular or special session thereof, signed by one hundred or more freeholders of said county, asking said board to make an appropriation of money to aid a railroad company, named in such petition, then duly organized under the laws of this State, in the construction of a railroad in or through such county, or whenever such a petition shall be presented to such board of commissioners as aforesaid, signed by twenty-five freeholders of any township of such county, asking such township to make an appropriation of money to aid a railroad company named in such petition, and then duly organized as aforesaid, in constructing a railroad in or through such township, by taking stock in or donating money to such company to an amount specified in such petition, not exceeding, however, two per centum upon the amount of the taxable property of such county or township, as the case may be, on the tax duplicate of the county, delivered to the treasurer of the county for the preceding year, it shall be the duty of such board of commissioners, after being satisfied that such petition has been properly signed by the requisite number of freeholders of such county or township, as aforesaid, to cause the same to be entered at full length upon the records."

The third section of said act reads as follows:

"Sec. 3. The auditor of such county shall immediately give notice, to be published for at least four weeks successively in some newspaper of general circulation in the county, or if none be published therein, in some newspaper most convenient thereto, and by printed handbills, to be posted in three public places in each township of the county where a county appropriation is prayed for, or in ten public places in the particular township where a township appropriation is prayed for in the petition. Said handbills shall be posted, by the sheriff of the county, three weeks prior to the day fixed for taking the vote of the county or of the particular township named in said petition, as the case may be, and the same, as well as said newspaper publication, shall notify the qualified voters of the county or of the particular

township, as the case may be, that the polls will be opened on the day fixed by the order of the board of commissioners, at the several voting places in the county, or in the township, as the case may be, to take the votes of the legal voters thereof upon the subject of such county or township aiding in the construction of the railroad named in such petition, to an amount to be specified in such notice; and the auditor of the county shall make his official certificate that said notice was published, and said sheriff shall make his like certificate that said handbills were posted as required by this act, which certificates shall be entered upon the records of the board of commissioners, and shall be sufficient evidence of the facts therein stated."

It will be observed that the first section requires that the petition shall specify the amount to be appropriated, not, however, exceeding two per centum upon the amount of the taxable property of such county or township on the tax duplicate of the county, delivered to the treasurer of the county for the preceding year.

It is required by the third section, that "the amount shall be specified in the notice."

The petition did not specify any amount. It asked for two per cent. on the taxable property of the township. Two per cent. upon the taxables of the township is a specific proportion, but not a specific amount. The amount of taxables varies every year, and the amount would not be the same in any two successive years. No year is mentioned in the petition, and it might mean the current year, or the year preceding, upon which the tax had recently been paid. This uncertainty is fatal. It is the amount that is required to be specific, and not the per centum. In the first section of the said act a clear distinction is made between the amount and the per centum, for it is provided that the amount shall be specified, which amount shall not exceed two per centum upon the taxable property of the preceding year. It is maintained by the appellants, that "that is certain which can be made certain." We do not think, from the language

used in the first and third sections of the act under consideration, that the legislature intended that the tax-payers should be required to go to the tax duplicate and ascertain the amount of the taxables, and then make a calculation to ascertain the amount to be assessed. The amount is imperatively required to be specified, but there is a limitation placed upon the board, by providing that such amount shall not exceed two per cent. of the taxables upon the duplicate for the preceding year. When the amount of the appropriation is stated in the petition and the notice, in dollars and cents, the tax-payers will know the extent of the burden they are asked to assume. *The State, ex rel. Lexington, etc., R. R. Co.,* v. *Saline County Court,* 45 Mo. 242; *The State* v. *Saline County Court,* 48 Mo. 390.

It was said in *Adriance* v. *McCafferty,* 2 Rob. N. Y. 153, that "where a statute, in effect, strips an individual of his property or title, or which in any way affects the same, its requirements must be strictly complied with to enable parties purchasing to acquire a title. Moreover, the requirements of the statute are the very conditions upon which the owner is divested of his title and property; and it does not lie with the court to consider whether the statute was reasonable, or whether the notice in this case nearly complied with the act; but whether the provisions of the statute have been literally pursued and strictly complied with. The two cases (*Culver* v. *Hayden,* 1 Vt. 359, and cases therein cited, and *Spear* v. *Ditty,* 9 Vt. 282) cited in the plaintiff's points establish this view." See Blackwell Tax Titles, 213.

The cases of *Wheeler* v. *Mills,* 40 Barb. 644, and *Bunner* v. *Eastman,* 50 Barb. 639, are very much in point, and fully sustain the views above expressed.

We are of the opinion that the petition and the notice were fatally defective, for not specifying the amount of the appropriation. This disposes of the first and second objections.

As to the third objection, we are of the opinion that the certificate of the sheriff, that he had posted up the notices in

ten public places in the township, is *prima facie* evidence of the fact. While it would be the better practice for the sheriff in his certificate to state at what places he posted the notices, we do not think that the certificate would be defective for the failure to so state.

We are of the opinion that the fourth objection, if true in fact, would be fatal to the validity of the election, as the third section imperatively requires that the notices must be posted in ten public places in the township. There must be a strict and rigid compliance with this plain and undoubted requirement of the statute.

We are of the opinion that there is nothing in the fifth objection. It is provided in the second section of said act, that the judges and inspectors of elections shall be governed in the reception of votes by the laws then in force regulating general elections. No special registry shall be required as preliminary to the elections prescribed by this act, but the last preceding registry shall govern. Such an irregularity at a general election would not affect the validity of the election. See sections 14 and 15 of the act for contesting elections. 1 G. & H. 318; *Gass* v. *The State, ex rel. Clark,* 34 Ind. 425.

There is nothing in the sixth objection. The vote was taken on the 7th day of August, 1869. The registry law was repealed on the 13th day of May, 1869. 3 Ind. Stat. 235.

We are of the opinion that the seventh objection is valid and is fatal to the validity of the levy of the special tax. The twelfth section of said act reads as follows:

"Sec. 12. If a majority of the votes cast shall be in favor of such railroad appropriation, the board of county commissioners, at their ensuing regular June session, shall grant the prayer of said petition, and shall levy a special tax of at least one-half the amount specified in said petition, but not exceeding one per centum upon the real and personal property in the county or township, as the case may be, liable to taxation for state and county purposes, which tax shall be collected in all respects as other taxes are collected for state

and county purposes; and if the sum so levied shall not be equal to the amount specified in said petition, then the residue thereof shall be levied by said board of county commissioners at the June session of the following year."

The above section provides that "the board of county commissioners, at their ensuing regular June session, shall grant the prayer of the said petition, and shall levy a special tax of at least one-half of the amount specified in said petition." It is also provided in the latter clause of said section, "and if the sum so levied shall not be equal to the amount specified in said petition, then the residue thereof shall be levied by said board of county commissioners at the June session of the following year."

We think that it is very manifest that the legislature intended that the levy should be made at the regular June session, and at no other time. In our opinion, it is mandatory, and not directory. If it should be ascertained within a month after the first levy at the regular June session that the sum levied was not equal to the amount specified in the petition, the residue could not be levied at any intermediate regular session. It can only be done at the next regular June session. There is no power given to make the levy at any other time than at the regular June session. It was said by this court, in *English* v. *Smock,* 34 Ind. 115, that "the board of commissioners is a court of inferior and limited jurisdiction, and it is well settled, both on principle and by authority, that where statutory powers are conferred on such a tribunal, and a mode of executing those powers is prescribed, the course pointed out must be strictly pursued, or the acts of such court will be *coram non judice* and void. When such a court has been entrusted with the exercise of discretionary powers, and the acts done are within the power conferred, and have been performed in good faith, then no court possesses the power to interfere with or control such discretion."

This leaves for our consideration and decision the eighth objection. The 18th section of said act reads as follows:

"Sec. 18. A failure on the part of the railroad company to commence work upon the railroad in said county within one year from the levying of such special tax, or failure to complete such railroad ready for use within three years from such levying, shall forfeit the rights of such company to such donation, unless the county commissioners, for good cause shown, shall give not to exceed one year's further time in which to complete the same, and the money raised by said special tax shall go into the general funds of the county or township, as the case may be, and be used accordingly."

The railway company, by answer, denied the truth of the allegations contained in the complaint in reference to the failure of the company to commence work upon the railroad within said township within one year from the levying of the tax. Affidavits and counter affidavits were filed. An affidavit was filed by the appellees, which was made by eighteen citizens and tax-payers of said township, in which it is stated, "that for more than one year after the levying of such railroad tax, to wit, for more than one year after the 15th of June, 1870, said railroad company failed to commence any work on said road within said county of Miami, nor was any work commenced on said railroad from the said 15th of June, 1870, until the 1st day of March, 1872, in said county of Miami. Said affiants further say, as they are informed and believe, one Harrison Grimes, a resident and large land-holder of Union township, in said Miami county (which township is not subject to any such railroad tax, being on the line of said railroad and interested in the same), on or about the —— day of ———— , 1871, by a collusion with the officers and stockholders of said railroad company, and for the sole purpose of evading the provision of section 18 of the railroad act of May 12th, 1869, and preventing a forfeiture of said tax, went on the line where he supposed said railroad line would run and used a plow or scraper less than half of one day; that at the time there had been no letting of the work on said road; that said line of road was not defined, no stakes had been set by an engineer, and the

work performed was under no contract for the construction of said road; and said work was of no value or benefit in the construction of said railroad, and done for no other purpose than as a pretence and to evade a requirement of law; all of which facts, as herein stated, are substantially true, as said affiants, from their own personal knowledge, and from the best information, believe true."

The appellants filed the affidavit of the said Harrison Grimes, who, upon oath, states that he is a resident of Miami county, Indiana, and has been for the last five years; that he was employed to work, and did work, for the Detroit, Eel River, and Illinois Railroad Company, on the railroad of said company, between the first and sixth days of June, 1871, at a point on said railroad within the township of Jefferson, in said county of Miami; that said work was done by him and others in his employ, and was done in grading the road bed of said railroad and preparing it for the ties; that said railroad company paid him for said work, and he gave a receipt to the company for the same; that said work is now progressing rapidly on said railroad, and bids fair to be completed within the next six months.

R. K. Charles and Samuel Lewis filed affidavits, in substance the same as that of Mr. Grimes.

It will be observed that Mr. Grimes does not controvert the truth of the statements in the affidavits filed by the appellees, "that at the time there had been no letting of the work on said road; that said line of road was not defined; that no stakes had been set by an engineer; and that the work performed was under no contract for the construction of said road." Mr. Grimes, in his affidavit, studiously avoids stating how much work he did, or how much he received from the company for such work. He seems to be equally cautious in his statement that the work was progressing rapidly. It would have been more to the purpose, and far more satisfactory, if he had stated what progress had been made in the construction of the said road in Miami county, and especially in Jefferson township, in said county.

We are required to give a reasonable and common-sense construction to the eighteenth section, and one that will fairly carry into effect the legislative intention. It is provided that a failure to commence work within one year from the time of levying the special tax shall work a forfeiture, unless the time is extended by order of the board of county commissioners. What was intended by the phrase "to commence work?" We think that it means that the company shall commence work in good faith, and with the honest purpose of constructing the road within a reasonable time, taking into consideration the extent and character of the work to be done. The most favorable view that can be taken for the company is, that Grimes worked from the 1st to the 6th of June. His failure to state how many hands he had employed, and how many hours or days they worked, creates a very strong presumption that the time stated in the affidavit filed by the appellees was the true time. We know that railroad companies do not commence the construction of their road beds until there has been a survey of the route; until the exact location of the line has been fixed and the grades established. We cannot regard the work done in Jefferson township as any compliance with the plain and undoubted requirements of the eighteenth section of said act.

We entertain no doubt that the levy of the special tax was illegal and void, and that the decision of the court below was correct.

The judgment is affirmed, with costs.

WORDEN, J., concurs in the judgment, but is of the opinion that the petition and notice sufficiently specify the amount to be appropriated.

*J. Morris, W. H. Withers, N. O. Ross,* and *R. P. Effinger,* for appellants.

*H. I. Shirk, J. Mitchell, L. Barbour,* and *C. P. Jacobs,* for appellees.