CATRON v. LaFAYETTE COUNTY, *Appellant.*

DIVISION ONE.

1. **Practice:** CHANGE OF VENUE. Under the law as it existed prior
   to the revision of 1889 ( R. S. 1889, sec. 2262 ), it was not required
   to send a cause on change of venue to some other county in the
   same or an adjoining circuit.

2. **Pleading:** COUNTY BOND. It is necessary, in declaring on a bond
   executed by a county, to show the authority for its issuance.
   ( *Donaldson v. County of Butler,* 98 Mo. 163.)

3. ———— : ————. It is not required, however, to plead in detail a
   compliance with the contract and statute under which the issue
   was made.

4. ———— : ———— : OVERISSUE: DEFENSE. In an action on bonds
   issued by the county under an act limiting the total amount to be
   issued, the sum sued for being less than the limitation, the peti-
   tion need not charge that there was not an overissue, it being a
   matter of defense, if there was.

5. ———— : ———— : ————. Even if such overissue were not a matter
   of defense, an averment in the petition that the bonds were duly
   issued would be sufficient.

Catron v. LaFayette County.

6. **Parties:** GUARDIAN. One can sue in his own name on such bonds assigned to him as guardian of his ward. (R. S. 1879, sec. 259.)

7. **County Bonds:** LIMITATION ON ISSUE. Where bonds are issued by the county court at different times under an act limiting the total amount to be issued, the fact that the court afterwards issued bonds beyond the limit does not invalidate such bonds as were issued and delivered before the limit was exceeded.

8. ———: COUNTY COURT ORDER : VALIDITY OF BONDS. General Statutes of 1865, chapter 36, page 221, provided there should be erected in each county a court house and jail, and for these purposes the county courts might "issue bonds of their respective counties in such form, for such time and in such sums, as they may deem expedient." The county court of defendant county entered an order that a certain number of bonds of a certain sum each should be issued to a contractor but did not prescribe their form or time. Negotiable bonds fixing the time and interest were issued under the seal of the court and signed by the presiding judge and attested by the clerk. *Held* that the bonds were within the terms of the order and were within the authority of the county court.

9. **County Road Bonds:** RIPRAPPING BRIDGE. Under the act of the legislature of 1868 (Acts, p. 150), authorizing a county to issue bonds to pay for improving public roads and "building culverts and bridges to secure permanent and goods road," the county had authority to issue bonds to pay for riprapping around the abutment of a bridge to prevent its becoming a wreck.

10. ———: ———. Besides, said act recognizes a bridge as part of a road, and the court was authorized to issue bonds for "repairing" roads.

11. ———: ———: COUPON BONDS. The fact that the legislature authorized the county court to issue the road bonds with coupons attached did not make the coupon form imperative.

*Appeal from Jackson Circuit Court.*—HON. T. A. GILL, Judge.

AFFIRMED.

*Wallace & Chiles* and *J. S. Blackwell* for appellant.

(1) The court erred in awarding a change of venue to Jackson county. The change should have been to some county in the same circuit. *Potter v. Adams*, 24 Mo. 159 ; *State v. Knight*, 61 Mo. 373 ; *Taylor v. Railroad*, 68 Mo. 397 ; *Squires v. City*, 89 Mo. 226 ; *Dowling v. Allen*, 88 Mo. 299 ; *State v. Gabriel*, 88 Mo. 631. (2) The

petition did not state a cause of action. R. S. 1879, sec. 3519; G. S. 1865, ch. 36, p. 221; *Wolcott v. Lawrence Co.*, 26 Mo. 272; *Sturgeon v. Hampton*, 88 Mo. 213; *Bryson v. Johnson Co.*, 100 Mo. 76. (3) "A petition in an action on county bonds or coupons should show the authority for their issuance." *Donaldson v. Butler Co.*, 98 Mo. 163. "The counties of this state have no inherent or general power to issue bonds." *Donaldson v. Butler Co.*, 98 Mo. 166; *Cook v. Putnam Co.*, 70 Mo. 668. (4) "It would seem quite obvious that every essential element of such power must be plainly set forth in the pleading which seeks a recovery on paper, the necessary result of the exercise of such special and limited power, or else such pleading must needs be confessedly and radically defective." *Weil v. Greene Co.*, 69 Mo. 281; R. S. 1865, ch. 36, p. 221, sec. 1; R. S. 1865, ch. 37, p. 225, sec. 3; *Johnson Co. v. Wood*, 84 Mo. 515; *Reardon v. St. Louis Co.*, 36 Mo. 555; *Steines v. Franklin Co.*, 48 Mo. 167; *Smallwood v. LaFayette Co.*, 75 Mo. 450; *Ruggles v. Collier*, 43 Mo. 353; *Ray Co. v. Bently*, 49 Mo. 236. A county is a public corporation. *State ex rel. v. Court*, 34 Mo. 570; *State ex rel. v. Harris*, 96 Mo. 29, 37; *Dallas Co. v. Mackensie*, 94 U. S. 663; *Spears v. Bond*, 79 Mo. 467; 1 R. S. 1879, sec. 3519; R. S. 1889, sec. 2077. (5) The county court of LaFayette county could only "issue" bonds "on behalf" of such county by appointing an agent by its order of record, to execute such bonds "on behalf of such county," and especially for erecting a county jail. G. S. 1865, ch. 37, p. 225, sec. 3; *Dennison v. St. Louis Co.*, 33 Mo. 168; *Piffey v. Jefferson Co.*, 57 Mo. 69; *Johnson v. School Dist.*, 67 Mo. 139; *Folger v. Heidel*, 60 Mo. 286; *Maupin v. Franklin Co.*, 67 Mo. 327. (6) The plaintiff was bound at his peril to inquire as to the extent of the power or want of power of the county court and its agents to execute bonds on behalf of the county. 1 Dillon on Mun. Corp. [2 Ed.] 372-3; *Argenti v. San*

*Francisco*, 16 Cal. 282 ; *Wolcott v. Lawrence Co.*, 26 Mo. 275 ; *Reardon v. St. Louis Co.*, 36 Mo. 560 ; *Sturgeon v. Hampton*, 88 Mo. 213 ; *Steines v. Franklin Co.*, 48 Mo. 186. (7) The bonds sued on were illegal and void in their inception and could not be ratified. *Kansas City v. Railroad*, 81 Mo. 290 ; *Taylor v. Township*, 25 Iowa, 451 ; *Johnson v. School Dist.*, 67 Mo. 321.

*Wash Adams* for respondent.

(1) The county court of LaFayette county had authority to issue the bonds sued on. G. S. 1865, p. 221. (2) The bonds issued were negotiable securities, and are governed by the principles applicable to commercial paper. *Carpenter v. Lathrop*, 51 Mo. 492 ; *Steines v. Franklin Co.*, 48 Mo. 186 ; *State v. Saline Co.*, 48 Mo. 390 ; *Bartell v. Schuyler Co.*, 44 Mo. 197 ; *Flogg v. Palmyra*, 33 Mo. 440 ; Daniel on Neg. Inst., sec. 1502 ; Dillon on Munic. Corp., sec. 486. (3) Under its power the county court could issue and sell the bonds in advance to raise money to build a jail. The only question that concerns the purchaser of such a bond is, whether the court had power to issue it. From this it follows that no irregularity, fraud or misconduct of the county officials will be allowed to defeat such bonds when in the hands of an innocent purchaser for value. *Lexington v. Butler*, 14 Wall. 282 ; *Marshall Co. v. Schenck*, 5 Wall. 772 ; *Gelpcke v. Dubuque*, 1 Wall. 175; *Hackett v. Ottowa*, 9 Otto, 362 ; *Belo v. Commissioners*, 76 N. C. 492 ; *San Antonio v. Lane*, 32 Tex. 405 ; *Lynchburg v. Slaughter*, 75 Va. 57 ; *Greeley v. Jacksonville*, 17 Fla. 174 ; *Rouede v. Jersey City*, 18 Fed. Rep. 719. (4) The overissue did not invalidate the bonds previously issued. *Daviess Co. v. Dickinson*, 117 U. S. 657 ; *Stockdale v. District*, 47 Mich. 226 ; *Bank v. Hicher*, 8 S. & M. 151 ; *McPherson v. Foster*,

43 Ia. 48; Story on Agency, sec. 166. (5) The insertion of the ten-per-cent. interest in the bonds did not invalidate them. The bonds are in proper form. The president and clerk of the county court were the proper persons to sign them. *Blair v. Cuming Co.*, 111 U. S. 368; *Ralls Co. v. Douglass*, 15 Otto, 728; *Neely v. Yorkville*, 10 S. C. 141; *Walnut v. Wade*, 103 U. S. 683; *Bank v. Statesville*, 84 N. C. 169; *Town of Windsor v. Hallett*, 97 Ill. 204. (6) When any judicial or official act is shown to have been done in a manner substantially regular, it is presumed that formal requisites to its validity were complied with. *Addis v. Graham*, 88 Mo. 197; *Flagg v. Palmyra*, 33 Mo. 450; 19 Ind. 451. (7) The statute requiring a scroll to be expressly denominated a seal has no application to corporate or official seals. *Dale v. Wright*, 57 Mo. 110; *City of Kansas v. Railroad*, 77 Mo. 180. (8) The point that Catron is not the real party in interest in respect of the first two counts is not well taken. The form of indorsement makes these bonds payable to John Catron. He alone is the proper party to sue. The suit could not be maintained by Mary Catron. *Jeffries v. McClean's Ex'r*, 12 Mo. 541; *Harney v. Dutcher*, 15 Mo. 89; *Brick Co. v. Cook*, 44 Mo. 29; *Webb v. Morgan*, 14 Mo. 428; *Beattie v. Lett*, 28 Mo. 596; *Atchison v. Railroad*, 80 Mo. 214. (9) The objection that the road bond in the sixth count is not a coupon bond is without merit. *Bartlett v. Schuyler Co.*, 44 Mo. 197. (10) The contention that the change of venue should not have been awarded to a county outside of the circuit finds no support in the statute.

BRACE, J.—This is an action on six money bonds of the county of LaFayette, executed under the seal and signed by the president of the county court of said county and attested by its clerk, five of them dated January 3, 1867, each for the sum of $500 and each payable twelve months after date, with interest from date at the rate of ten per cent. per annum (compound), to

the order of Thomas M. Hackett, and by him assigned by indorsement for value, before maturity, to the plaintiff; and one dated April 6, 1869, for $100, payable twelve months after date to the order of Andrew O'Malley, with interest from date at the rate of ten per cent. per annum ( compound ), and by him assigned by indorsement for value, before maturity, to plaintiff. The suit was instituted in the circuit court of LaFayette county on the twenty-sixth of December, 1884, taken thence, upon application of plaintiff for a change of venue, to the circuit court of Ray county, and thence, upon the application of defendant, to the circuit court of Jackson county, in which it was tried by the court, without the aid of a jury, on the petition, answer and reply, defendant's demurrer to the petition and his objections to the introduction of any evidence having been overruled. On the trial the defendant asked for seventeen declarations of law, all of which the court refused; the plaintiff asked none.

The court found for the plaintiff on each count of the petition, and rendered judgment in his favor for the amount of each and all of said bonds, with interest according to their tenor, less the amount of credits for interest paid before suit. From which judgment the defendant appeals. The errors insisted upon for reversal will be noticed in their order.

I. In the circuit court of Jackson county the defendant moved that the cause be remanded to the circuit court of Ray county, for the reason that these two courts not being in the same judicial circuit, the latter had no power to award a change of venue to the former. When the change of venue in this case was awarded, the statute provided that "a change of venue may be awarded in any civil suit to any court of record * * * ." R. S. 1879, sec. 3729. The only limitation being that it must be sent to the court in "some county where the cause or causes complained of do not exist, as convenient as may be to the opposite party." R. S.,

sec. 3733. A change in the law in this respect was made in the last revision. R. S. 1889, sec. 2262. But the act in force when the change of venue in this case was granted did not require the cause to be sent to some other county "in the same or an adjoining circuit" as now, and we have no power to read the amendment into *that* law.

II. By answering the petition, defendant waived all objections to its sufficiency except one, *i. e.*, " that it failed to state a cause of action," and this objection *only* could be urged as ground for refusing to permit any evidence to be introduced in its support. The several bonds sued on were filed with the petition, they are each declared on in apt terms in separate counts as negotiable instruments, duly issued by the county court of said county under its seal ; the first "five for the purpose of erecting a good and sufficient jail in the city of Lexington, then the established seat of justice of said county," and the sixth " for the purpose of causing the Wellington and Lexington road, a public road in said county, to be improved by grading, throwing up of embankments and building culverts and bridges so as to make said road secure, permanent and good." For these purposes the law authorized the issue of county bonds. G. S. 1865, ch. 36, p. 221, sec. 1 ; Sess. Acts, 1868, p. 150, secs. 1, 2, 7 ; p. 42, secs. 1, 2.

In pleading, a distinction is necessarily made in declaring upon negotiable securities issued by a county of this state and individuals ; a petition may be good against an individual that would not be good against a county. This grows out of the fact that the county has no general or inherent power to issue bonds ; hence, in declaring upon such bonds, it becomes necessary to allege that they were issued by authority of some special act, or for some purpose for which the counties have the right and power to issue bonds. *Donaldson v. Butler Co.*, 98 Mo. 163 ; Dillon Mun. Corp. [4 Ed.] sec. 509. The pleader in this case recognized the force of

this distinction and in each count avers that the bond declared upon was for a purpose for which the county court had the right and power to issue bonds. The appellant, however, contends that, as the section cited authorizing the issuing of bonds, for the purpose of building a jail, limited the amount to be issued by the county court to $10,000, unless a larger sum should be authorized by a majority of the votes cast at an election for that purpose, the pleader in his petition ought to have negatived an overissue by some additional averment in the petition. We do not see the necessity of any such additional averment to the statement of a cause of action on these jail bonds; their amount was within the limit of the power of the county court. The petition charged that they were duly issued by that court. If, in fact, the power of that court in this behalf had been exhausted by previous issues, that fact would seem properly to be matter of defense, and so counsel for defendant seem to have regarded it when they abandoned the demurrer, and in the answer set up an overissue of bonds by the county court as a defense to the action, and thus at the trial had that question passed upon. *State to use of Ladd v. Clark*, 42 Mo. 523; Bliss on Code Pleading, sec. 202; *Railroad v. Otoe Co.*, 1 Dillon, C. C. 338; R. S. 1879, sec. 663; *Montgomery Co. v. Auchley*, 92 Mo. 126.

If it be held, however, that in order to recover the plaintiff must allege, and in the first instance show, that the power had not been exhausted, the allegation that the bonds were "duly" issued would have been sufficient to put the plaintiff on such proof. R. S. 1879, sec. 3551. So the petition stated a cause of action and made a *prima facie* case on these jail bonds against the defendant in either view, so far as this objection goes.

It is further urged that the petition is insufficient, in that it is not averred that Hackett, the payee, was the contractor for the building of the jail, nor that he

gave bondor complied with the contract, nor that the jail was erected by said Hackett or was received or used by the defendant, nor that any estimate of the probable cost thereof was made, nor that an agent was appointed to enter into the contract with said Hackett, or to execute the bonds, nor that other details required by the statutes cited to be observed by county courts in the building of jails and the improvement of public roads were performed as therein required. This is a suit upon negotiable instruments purchased for value before maturity, in the usual course, of business, and not upon a contract for building a jail or improving a public road, and with these matters of detail such purchaser need not concern himself. He must at his peril ascertain that the county court has power to issue the security for such purposes, and then he has a right to trust to the decision of the proper authorities when the bonds were issued, as to the regularity of the proceedings. *Steines v. Franklin Co.*, 48 Mo. 167; *State to use v. Saline Co.*, 48 Mo. 390 ; *Carpenter v. Lathrop*, 51 Mo. 483; *City of Lexington v. Butler*, 14 Wall. 282; 2 Daniel on Neg. Inst., sec. 1537 ; 1 Dillon on Mun. Corp., sec. 486.

III.   There is nothing in the objection to the first two counts in the petition that plaintiff could not sue on the two bonds therein declared upon, for the reason that they were assigned to him as guardian of Mary Catron. As the trustee of an express trust authorized by statute to sue for the dues of his ward, the action was properly brought by him on these bonds in his own name. R. S. 1879, secs. 3463, 2579. Besides, the objection was waived by answering. The petition stated a good cause of action on each of the bonds sued on.

IV.   The answer sets up as a defense, that the five jail bonds sued on were part of a series aggregating more than $10,000, issued by the county court for the purpose stated in the petition. The evidence tends to show that there were issued under the several orders of the county

court for the purpose aforesaid bonds amounting in the aggregate to the sum of $10,508.01; of these, two, amounting to $1,000, were issued under an order of the county court made December 17, 1866; nine, amounting to $4,500, including the bonds sued on, were issued January 8, 1867, under an order made January 5, 1867; one, of $500, under an order made March 13, 1867; one, of $700, under an order made April 27, 1867, and nine amounting to $3,808.01, under an order made May 18, 1867. The five bonds sued on were sold, assigned and delivered to plaintiff for their face value in money by Hackett on the fourteenth of January, 1867, so that, *at that time*, the aggregate of the bonds ordered and issued by the county court, including these sued on, amounted only to the sum of $5,500. It was doubtless the duty of the plaintiff, when he purchased these bonds, to ascertain whether they were within the limit of the power of the county court, under the law, to issue them. But if, at the time they were issued and purchased, it was within the power of the court to issue them, no subsequent improper issue of bonds could impair his rights under the bonds thus legally issued and purchased by him. The fact, that the county court, after he had paid his money for these bonds, and his rights under them had become fixed, issued other bonds for the same purpose until finally they exceeded in the last issue by a small sum the aggregate amount which they were authorized to issue for such purpose, could in no way affect the integrity of these bonds of plaintiff issued strictly within the limits of their power. The issue for the excess only would be void. The bonds issued and delivered before the limit of the power was reached are valid, and plaintiff's were of this number. *Daviess Co. v. Dickinson*, 117 U. S. 657; *Stockdale v. School Dist.*, 47 Mich. 226; *McPherson v. Foster*, 43 Iowa, 48.

V. There can be no question that the county court had the power to issue the jail bonds in suit in such form and for such time as they might deem expedient.

General Statutes, 1865, *supra*, which reads as follows: "There shall be erected in each county, at the established seat of justice thereof, a good and sufficient courthouse and jail, and for these purposes the several county courts may issue bonds of their respective counties in such form, for such time and in such sums as they may deem expedient, not exceeding in amount $10,000 ; *provided*, that a larger sum than $10,000 may be issued by the county court, when the same is authorized by a majority of the votes cast at any election held for that purpose.

The record entry of the order for their issue of the date of January 5, 1867, did not fix the form and time of such bonds, but simply " ordered that nine county bonds be issued to Thos. M. Hackett for the sum of $500 each " and " that said Hackett be charged with the same on account of building jail." The bonds were accordingly so issued, and charged at their face value, to Hackett ; the form and time were fixed in the bonds, and, as an incident of the time, the rate of interest ; the form that of a negotiable instrument under the seal of the court signed by the president and attested by its clerk ; the time, twelve months after date ; the rate of interest, ten per cent. In the performance of these acts the county court acted not as a judicial tribunal, but as the agent of the county whose acts are to be tested by the principles governing such agencies, and not by those governing the actions of judicial tribunals. There is no incongruity whatever between the order of court entered of record, and the bonds in question issued in pursuance thereof. The bonds are within the terms of the order, and consistent with it ; together they consti-tute the action of the agent in behalf of its principal in the matter of these bonds. That action was certified to the world on the bonds, under the seal of the court, attached by its proper officers, as evidenced by their signatures duly proven on the trial, and was within the scope of the authority vested by law in the county court as the agent of defendant. It was as well within its

power to fix the rate of interest which these bonds should bear, as the time when they should mature. That the court did both, is proven by its seal and the signatures of its officers on the bonds. *Musser v. Johnson*, 42 Mo. 74 ; *St. Louis Schools v. Risley*, 28 Mo. 415 ; *Small v. Field*, 102 Mo. 104 ; *Levering v. The Mayor*, 7 Hump. 553 ; *Solomon's Lodge v. Montmollin*, 58 Ga. 547 ; *City of Memphis v. Adams*, 9 Heiskell, 518 ; *Morris v. Keil*, 20 Minn. 531 ; *Union, etc., Co. v. Bank*, 2 Col. 226 ; Dillon on Mun. Corp. [ 4 Ed. ] sec. 191 ; *Town of Weyauwega v. Ayling*, 99 U. S. 112 ; *Blair v. Cuming Co.*, 111 U. S. 363. The force of the *prima facie* case made by this proof is in no way impaired by the fact that the time the bonds should run, and the interest they should bear, was not stated in the order entered of record. The purchasers had only the bonds to look to and the law that authorized their issue. *Walnut v. Wade*, 103 U. S. 683 ; *County of Daviess v. Huidekoper*, 98 U. S. 98. There is, therefore, nothing in the point that the bonds were vitiated because made to bear ten per cent. per annum interest ( compound ), a rate which might then be lawfully contracted for in writing. R. S. 1879, secs. 2724 and 2728.

VI. What has been said applies to many of the objections urged against the validity of the sixth or road bond ; in addition it will be necessary only to notice those specially urged against this bond. The statute by virtue of which this bond was issued authorized the county court in their respective counties " to cause all public roads therein, or any of them or any part thereof, to be improved by macadamizing, grading, throwing up of embankments and building culverts and bridges so as to secure permanent and good roads." Sess. Acts, 1868, p. 150, sec. 2. And for such purposes " to borrow money on the credit of the county, and issue the bonds of the county with coupons attached ; but said bonds shall not be of a denomination of less than $100 nor more than $1,000, and shall not run

exceeding twenty years nor bear interest at a higher rate than ten per cent.; nor shall said bonds or any of them be sold or disposed of at less than their par value, that is to say, the amount called for on their face; said bonds may be made transferable in such manner as the county court by its order may direct." Sec. 7. It appeared from the evidence that the bond was issued in payment for work done in riprapping around the abutments of a bridge across " Sni creek " over which the public road from Lexington to Wellington ran, so as to keep said abutments from sliding into the creek, and said bridge from becoming "a wreck." It is contended that this purpose is not within the terms of the act; this contention is groundless. The court is expressly authorized to issue bonds to build bridges, so as to secure permanent and good roads. If the bridge had fallen and washed away for want of the support which the riprapping afforded, there can be no question that the court could have issued bonds to build a new bridge. If they could secure the same result, i. e., " a permanent and good road, by riprapping the old, it certainly was within their power to issue bonds for that purpose ; besides, the act recognizes a bridge as part of a road and the court was authorized to issue bonds for " repairing" roads. Sess. Acts, *supra*, secs. 1, 7.

VII. It is further urged against this bond, that it is not a coupon bond, and the court made no order making it transferable. By issuing the bond in the form of a negotiable instrument, the court made it transferable, as such securities are transferred. Coupons are a convenient means for the adjustment and payment of interest at stated periods on negotiable instruments, that have a long time to run. They could have no place on a bond for a year. Their use is a mere matter of form and convenience. The position is not tenable that, because the legislature authorized the court to use this convenient form, when desirable, that they made its use

imperative, and that a valid bond could not be issued unless it had coupons attached to it.

VIII.   We do not deem it necessary to review the rulings of the court on the admission of evidence; we have examined all of the objections thereto, and find those rulings, in the main, correct, and no error committed in this respect that could affect the result; nor is it necessary to set out and examine the multitudinous instructions asked for, but refused by the court, or review the argument of counsel upon the question of ratification and estoppel based upon the fact that the work for which these bonds were issued was done, was accepted, and settled for by the county court with these bonds as cash, and the interest on them paid according to their tenor and effect annually for years after they came into the hands of the plaintiff.   In the view we take of the principles governing this case, the bonds were valid *ab initio* in the hands of the plaintiff and no ratification was needed to support them.   The trial court must have so held, and its judgment is affirmed.   All concur.