# THE SUPREME COURT

### OF

## THE STATE OF MISSOURI,

### FEBRUARY TERM, 1873, AT ST. JOSEPH.

———o———

DAVIS CARPENTER, JR., Appellant, *vs.* THE INHABITANTS OF THE TOWN OF LATHROP, Respondent.

1. *Bonds—Town of Lathrop—Subscriptions for, election touching—Votes—Judges —Poll Books—Recitals in bonds—Registration—Innocent purchasers.*—In a suit against the inhabitants of the town of Lathrop for the interest due upon certain bonds issued by that town, the following state of facts appeared in evidence: The bonds recited that they were issued pursuant to an order of the trustees * * "authorized by a vote of the people of said town at a special election held for that purpose." The records of the trustees showed that an election was ordered and that the bonds were ordered to be printed "in accordance with the order voted upon by the people of Lathrop on the 6th day of November, 1869." The testimony of the clerk of the election board showed that sixteen votes were cast and all in favor of the subscription. But no testimony indicated when the election was held; or that there were any judges of the election; or that any poll books were kept; or that any return of the votes cast had ever been made to any officer or body authorized to declare or decide the result; and the evidence strongly tended to show that no registration of the qualified voters of the town of Lathrop had ever been made and certified and filed as the law directed, or authenticated in any way. *Held,* that the issue of the bonds was unauthorized and that plaintiff could not recover.

In such a suit it would devolve upon plaintiff to show with reasonable certainty that the authority to issue the bonds had been conferred by an election authorized by law; that the vote had been preserved, by poll books or otherwise, by persons authorized to act for that purpose; and that the votes had at least been received and passed on by some persons authorized to decide whether the election had been carried, or whether the voters had assented to the subscription.

The recitals in the bonds would be sufficient to justify an innocent purchaser in receiving the bonds without being charged with notice of any mere irregularities in the conferring or exercise of the power necessary to their issue. But plaintiff would still have to show that an election was held at which the vote was taken, and that it had been taken and the result decided in substantial conformity to law.

2. *Bonds, agent—Issue of, by—Maker of bonds must show delegation of power to issue.*—The rule that it devolves on the holder of a bond to show the want of power in the maker to issue it, has no application where the maker is a trustee. In all cases where the bond or other instrument purports to have been issued by delegated power, and where it could not be issued without such delegation of power, it devolves upon the holder to show that such power has been conferred before he can recover.

*Appeal from Clinton Circuit Court.*

*Hall and Judson,* for Appellant.

I. The evidence introduced by defendant did not tend to make out a valid defense to the suit. The rule is well established that where a municipal corporation has power under any circumstances to issue negotiable securities, a *bona fide* holder has the right to presume that they were issued under circumstances which gave the requisite authority. (Flagg vs. Palmyra, 33 Mo., 440; Gelpcke vs. City of Dubuque, 1 Wall., 203; 5 Wall., 784; 48 Mo., 392; 48 Mo., 167.)

II. The want of a special registration for the purposes of the election in this case, even if it be admitted that no special registration was made, does not invalidate the instruments sued on. When the law imposes such a condition on the exercise of a power as a submission to a vote of the people, and an attempt has been made in good faith to comply with the condition, and it has been supposed by all parties to have been regularly complied with, the bond upon its face showing a compliance, strangers should not be required to look further. (48 Mo., 392; 24 Ills., 90; 48 Mo., 186; The Commissioners of Knox County vs. Aspinwall, 21 How., 539; The People vs. Kopplekom, 16 Mich., 342; 33 Mo., 450; 13 Wall., 305.)

It may be conceded that the want of a general registration would be fatal to the instruments sued on, for without a general registration, there would be no voters and there could be no election. But it might very well happen, that àt a special registration no voters would be registered, and of course the books of registration would not in such a case show a special registration. The purchaser in an eastern market may be satisfied as to the law; that there was a general registration of voters as the law requires; that the matter was submitted to the people, and that the proper authorities acted on that submission; but of the regularity of all the proceedings, he cannot be advised. An examination of the books of registration themselves would not show that a special registration was held, in case no voters were registered at such special registration. The purchaser of municipal bonds has trusted, and he had a right to trust to the decision of the proper authorities, made when the bonds were issued, as to the regularity of the proceedings. Such a decision radically differs from a naked usurpation of authority, and as to strangers who trust to it, ought to bind the municipality. (48 Mo., 393; *Id.*, 186, 187.)

III. The facts set up by defendant might be considered in a direct proceeding to prevent the consummation of the contract. But after the authority has been exercised, the stock subscribed and the bonds issued and in the hands of innocent purchasers, it would be too late, even in a direct proceeding, to call it in question; much less can it be called in question to the prejudice of a *bona fide* holder of the bonds in this collateral way. (48 Mo., 181; *Id.*, 392; 33 Mo., 450.)

IV. Two-thirds of the qualified voters, actually voting at the election, were sufficient to authorize the subscription in this case. (37 Mo., 270; 38 Mo., 455.)

V. The inhabitants of the town of Lathrop have received all the benefits of their contract with the railroad company. The road has been finished, a depot has been built and is maintained within the corporate limits. The stock subscribed for has been issued to them; and they should not be permitted to avoid their just responsibilities and refuse to perform their

part of the contract on any such pretexts as are set up in this case. (State *ex rel.*, K. C., St. J. & C. B. R. R. Co., vs. Alderman, 47 Mo., 349; Johnson vs. County of Stark, 24 Ills., 90; 33 Mo., 450; 21 How., 539; 2 Black, 722; 26 How., 299.)

*Everett and Ensworth,* for Respondent.

I. Under the law, the Board of Trustees of Lathrop had no authority to subscribe for stock in the St. Louis and St. Joseph Railroad Company and issue bonds of the corporation in payment thereof, unless two-thirds of the qualified voters of the corporation at a legal election held for that purpose, assented thereto, and thus conferred the power. The authority to subscribe for stock and issue bonds, is a statutory power, and is only invested when the conditions of the statute are strictly complied with. (St. Louis vs. Alexander, 23 Mo., 483; Mercer County vs. Pittsburg & Erie R. R., 27 Penn. St., 389; Fowler' vs. St. Joseph, 37 Mo., 237; 41 Mo., 230; 42 Mo., 171; State vs. Boon, 44 Mo., 254; State *ex rel.* L. & St., L. R. R., vs. Saline County Court, 45 Mo., 242; 48 Mo., 167, 392; 10 Wall., 683.)

II. The Board of Trustees of an incorporated town are required by law to keep a record of their official acts. In this case the records show no official acts, such as are requisite under the statute to an investure of power to subscribe for stock and issue bonds.

The record shows no order for a registration of voters of the corporation preceding the election; it shows no appointment of judges to hold said election; it shows no notice of the proposition which should have been published for the information and assent of the people; it shows no act of canvassing the votes cast at said election and determining the result of said election. The records are the evidence of the official acts of the trustees, and all material matters not entered on record are null and void, and do not confer power. (Medlin vs. Platte County, 8 Mo., 235; Dennison vs. County of St. Louis, 33 Mo., 169; Strouse vs. Drennan, 41 Mo., 289; Baltimore vs. Eschbach, 18 Md., 276.)

A special registration of the voters of a municipal corpora-

tion is necessary to confer power upon the officers thereof, preceding a special election called for the purpose of investing power to subscribe for stock and issue bonds. (Art. 2, § 4, Constitution of Missouri; W. S., Ch. 117, § 18; State *ex rel.*, Ensworth vs. Albin, 44 Mo., 349.)

The proposition to subscribe for stock and issue bonds must be submitted to the people for their information and their assent. (23 Mo., 510; 42 Mo., 175; W. S., 305, § 17.)

III. The want of power and defect of record are presumed by law to be known by every person—the corporation not being held liable for that which does not appear upon record; therefore there can be no such character as a *bona fide* innocent holder of municipal bonds, when the records show a non-fulfillment of the conditions upon which the authority of the Trustees to act depended. (48 Mo., 167–391.)

IV. Municipal officers are agents, and must, like other agents, pursue their authority strictly, and act within the scope of their power, (26 Mo., 272; 43 Mo., 353; 48 Mo., 167–392; Marsh vs. Fulton County, 10 Wall., 676.)

V. The Trustees of Lathrop had no authority under the statute to order a special election to ascertain whether the voters of the town were in favor of subscription for stock and issuing bonds. (W. S., 305, § 17; 7 Mass., 525.) The Legislature has made no provision for any such election. Unauthorized elections are simply nullities. (Cooley Const., Lim. 603.)

VORIES, Judge, delivered the opinion of the court.

This was a suit commenced before a justice of the peace in Clinton county. The action was founded on thirty interest coupons, for five dollars each, and purporting to be for six months interest due on the first day of January, 1871, on bonds issued or made by the town of Lathrop. The appellant recovered a judgment before the justice, from which an appeal was taken to the Clinton Circuit Court, when the plaintiff took a non-suit, and afterwards moved to set the same aside. The court overruled the motion and gave final judg-

ment for the defendant, to which rulings of the court the plaintiff at the time excepted, and appealed to this court.

The action having been brought before a justice of the peace, there were no formal pleadings on either side.

Upon the trial in the Circuit Court, the plaintiff read in evidence, without objection, thirty coupons upon which the action was brought, and closed his case. The coupons were all of similar form and read as follows :

$5.00. The town of Lathrop, in the county of Clinton, State of Missouri, will pay the bearer five dollars on the first day of January, A. D. 1871, at the bank of America, in the city of New York, being six months interest due on that day on bond No 236.

The coupons represented bonds numbered consecutively from No. 221 to No. 249, the remaining one being numbered 290.

It is agreed by the parties in this court that the bonds claimed to have been issued by the defendant are in the following form :

"Know all men by these presents that the town of Lathrop, in the county of Clinton, in the state of Missouri, acknowledges itself indebted and firmly bound to the St. Louis & St. Joseph Railroad Company or bearer in the sum of one hundred dollars, payable on the first day of January, A. D. 1880, together with interest thereon from the first day of January, A. D. 1870, at the rate of ten per centum per annum, payable semi-annually upon presentation and delivery of the coupons hereto attached, as they shall severally become due and payable, at the bank of America, in the city of New York. This bond is redeemable by said town at its option any time after five years from the date hereof, and is issued under and pursuant to an order of the board of trustees of the town of Lathrop, aforesaid, made under authority of the constitution of the state of Missouri, and the laws of the general assembly of the state of Missouri, and authorized by a vote of the people of said town at a special election held for that purpose. In testimony whereof," &c., and signed by what purport to be the signatures of

the president and clerk of the board of trustees with the seal of the town.

After the plaintiff's evidence was closed the defendant proved by one of the trustees of the defendant that he had in court the records of the board of trustees of said town, with its charter. The charter was in the usual form of those of towns organized under the general laws of the state. The witness was then asked to read from the entries of said board of trustees their action at a meeting held on the 27th of October, 1869, by which it appeared that at said meeting an order was adopted ordering that said town subscribe to the capital stock of the St. Louis and St. Joseph Railroad Company $40,000, for which bonds should be issued and delivered to said railroad company, as the road was completed as therein set forth, and other conditions to be complied with by said company; but as I do not deem said conditions material for the consideration of the case I omit them. But it was also provided or conditioned by an order that two-thirds of the qualified voters of said town vote in favor of such subscription at a special election, to be held on Saturday, the sixth day of November, 1869, at the office of J. O. Daniels, and all those voting in favor of said subscription should have on their ballots "railroad subscription, yes," and those voting against it should have on their ballots "railroad subscription no !"

It was further ordered on motion that a special election be held on Saturday, November the 6th, 1869, for the purpose of voting on the above proposition, and also to elect a town trustee to fill a vacancy then existing. The witness then stated that an election was held on the 6th day of November, 1869. That there was no special registration of voters preceeding said election, to his knowledge, &c. On cross examination the plaintiff caused the witness to read from the record of the proceedings of the town of Lathrop the following proceedings had on November 30th, 1869, and March 26th 1870:

"LATHROP, Mo., Nov. 30, 1869.

"Board met at call of the president. Mr. Whiting, chief engineer of the St. Louis and St. Joseph Railroad Company,

made propositions in behalf of said railroad company to locate the road through Lathrop and to cross the Kansas City and Cameron railroad in section 25, township 55, range 31. The following resolution was offered, and on motion was adopted.

"*Resolved*, That the board of trustees of the town of Lathrop accept the proposition of the St. Louis and St. Joseph Railroad Company to locate and build their road on section 25, township 55, range 31, so as to cross the Kansas City and Cameron railroad on section 25, township and range aforesaid, and establish and build their regular depot on the same. In consideration of the same we hereby authorize the president of the board of trustees of the town of Lathrop to have bonds printed immediately in accordance with the order voted on by the people of Lathrop on the sixth day of November, 1869, to the amount of forty thousand dollars (conferring with the president of the St. Louis and St. Joseph Railroad Company as to the form of the bonds,) signing the same in blank, (to be dated when delivered to the said railroad company,) and deliver them to the officers of———Bank of St. Joseph as trustees to hold and deliver the same to the amount agreed upon to the St. Louis and St. Joseph Railroad Company, whenever the conditions agreed upon by the parties are complied with on the part of said railroad company."

"LATHROP, Mo., March 26, 1870.

"Board met at call of president. Members all present except P. H. Odell.

"Mr. George A. Patch made a motion that we issue to the St. Louis and St. Joseph Railroad Company the bonds of Lathrop, with interest, to commence on the first day of July next; provided said railroad company complete the road by the first of July, A. D. 1870. Motion carried."

These orders and records were regularly signed by the president and clerk.

The defendant introduced evidence which tended to prove that no registration of voters was made for any election to be held on the 6th day of November, 1869.

One witness stated that he lived in Lathrop during the year

1869; that he voted at the election held under the order of the town on the 6th of November, 1869; he thought sixteen votes were polled; it might be that more were polled; that the population, he thought, was about 400. The votes polled were for the subscription unanimously; the 16 votes polled were by parties who claimed to have been registered voters; there was no other evidence of their having been registered except their representations. Other witnesses testified that they did not vote, were not registered and had no opportunity to be registered, and some of them were informed that they could not vote unless they were registered, and did not vote. Another witness stated that he voted at the election but did not consider it legal. Several witnesses testified that they were not registered and did not vote. S. B. Miller testified that he resided in Lathrop in the fall of 1869; had been living there previous to that time; was clerk of the election board; there were sixteen or seventeen votes polled, some three or four had the word "yes" marked off; all other votes were for the subscription; did not remember whether he had a list of registered voters or not. Doct. Burke testified that he resided in Lathrop at the time of the railroad subscription election; had resided there since October, 1868; was school officer; took the census of the town; there were a few less than 600 inhabitants in the town at the time; he voted for the subscription. This was substantially all of the evidence in reference to an election at which the qualified voters assented to the railroad subscription. It was proved that the bonds, or twenty thousand dollars worth of them, had been placed with the German bank, in St. Joseph, as collateral security to a debt of the railroad company; that the debt was less than four thousand dollars; that the bank had the power to sell the bonds if default was made in payment of the debt for which they were pledged.

That the debt was not paid, and the bonds were sold to one Winslow Judson for three thousand nine hundred dollars; that he afterwards sold the coupons, upon which suit was brought to plaintiff for the full amount of five dollars each.

This was all of the evidence material to notice in the case.

There was other evidence in reference to the completion of the railroad, and their compliance and non-compliance with the conditions of the subscription as made by defendant ; but as I view this case, these facts are not material in the present attitude of the case.

There were a number of points raised, and ably argued by the attorneys on either side, in this cause; but the material question is, had the town of Lathrop power to make the subscription of the stock to the railroad company and issue the bonds? I think it is admitted that the defendant had no such power, unless it was specially conferred on it by the Constitution and laws of this State, or by the consent of the qualified voters of the town under the provisions of the Constitution and laws of this State.

It is not necessary to examine the question whether the railroad company complied with its duties under the subscription of stock, in completing the road in the time named, or in erecting a depot at the place named, or any of these collateral facts. These are matters that need not concern the holder of a bond or coupon purchased for value and in good faith. If the power was conferred upon the trustees of the town to take the stock and execute the bonds, any irregularity in the exercise of the power conferred, or in the conferring of the power by the people, could not be relied on to defeat the bonds in a collateral way ; at least, when the bonds have passed into the hands of an innocent purchaser for value. But the important question in this case, as before stated, is, has the power ever been conferred on the trustees of the town of Lathrop to execute these bonds and coupons ?

Section 14, of Article 11, of the Constitution of the State, provides that "The General Assembly shall not authorize any county, city, or town to become a stockholder in, or to loan its credit to any company, association, or corporation unless two-thirds of the qualified voters of such county, city, or town at a regular or special election to be held therein shall assent thereto." This is a limitation upon the power of the General Assembly to confer the right or power upon counties and towns to take stock in the companies named.

By the 17th section of Article 2, of the statutes of this State concerning corporations (W. S., 305) it is provided that, "It shall be lawful for the County Court of any county, the city council of any city, or the trustees of any incorporated town, to take stock for such county, city, or town or loan the credit thereof to any railroad company duly organized under this or any other law of the State, *provided*, that two-thirds of the qualified voters of such county, city or town, at a regular or special election to be held • therein, shall assent to such subscription." It is obvious from these provisions that no power can exist in any city or town, or the council or trustees thereof to subscribe stock to or in any railroad company, or issue their bonds in payment thereof, until the power is conferred by the assent of the qualified voters, to be given in the way pointed out by law, that is to be given at a general or special election held in such city or town. I suppose it will not be disputed that the election named must be one authorized by law. Any subscription of stock made or bonds executed without or in the absence of such assent of the qualified voters, would be wholly void in the hands of whomsoever they might be found. But we are told with great earnestness that if the bonds which are issued by a county or town recite on their face that they were issued in conformity to the law, and that the qualified voters assented thereto, as the law directs, and that such bonds are payable to bearer, and are put into circulation and get into the hands of innocent purchasers; that then the city or town are estopped from setting up the defense that they were issued without the authority of law. In fact, in some of the adjudged cases, language is used by the courts rendering the decisions which would bear such an interpretation. In the case of the commissioners of Knox County vs. Aspinwall, *et al.*, (21 How., 530,) the learned judge who delivers the opinion of the court uses this language: "Another answer to this ground of defense is that the purchaser of the bonds had a right to assume that the vote of the county, which was made a condition to the grant of power, had been obtained, from the fact of the subscription by the board to the stock of the railroad comany and the issuing of the bonds.

" The bonds on their face imported a compliance with the law under which they were issued. "This bond," we quote, "is issued in part payment of a subscription of two hundred thousand dollars by the said Knox County to the capital stock, etc., by order of the Board of Commissioners, in pursuance of the third section of act, etc., passed by the General Assembly of the State of Indiana and approved 15th of January, 1849.

" The purchaser was not bound to look further for evidence of a compliance with the conditions to the grant of power."

The case under consideration by the learned judge did not require any such general and sweeping proposition in favor of the validity of the bonds then in question; for in that case an election was shown to have been held at which the votes had been regularly cast, and a sufficient number of given votes to confer the power.

The only objection to the validity of the bonds was that the sheriff had failed to give the notice required, but the election was fair and the people voted, by which the power was conferred, and the tribunal appointed by law had passed upon the vote cast, and decided that the measure was carried. In such case it may be admitted that an innocent purchaser may presume that the notice had been given or that any other merely formal matter had been complied with. But the *dictum* of the judge seems to go further and hold that where one who professes to act as agent or by delegated authority shall falsely recite in an instrument which he attempts to execute, that the power is conferred, that in such case the principal is bound by the recital, however false it might be; or in other words, that an agent may not only bind his principal by his acts, recitals and admissions within the scope of his authority as given him by the principal, but that he may go further and prove the authority itself by such recitals. This cannot be the law, and the learned judge, I suppose, did not intend to be so understood. I might refer to a number of other cases in which similar expressions are made, but it will be found in all of them (or at least it is, so far as I have examined) that there had been an election held at which the people interested had voted on

the subject, and in which the power had been thus conferred, and in which the attempt was to charge or affect an innocent holder of the bonds with some irregularity in the execution of the power. But it is not necessary for me to follow the subject further; all of the cases have been ably reviewed by Judge Wagner in the recent case of Steines *et al.*, vs. Franklin County *et al.*, 48 Mo., 167. In referring to the language used by Judge Bates in delivering the opinion in the case of Flagg *et al.*, vs. City of Palmyra, (33 Mo., 440,) Judge Wagner uses the following language :

" This language is exceedingly broad, and if it is construed as applicable only to the facts in the case it is sustained by numerous cases. But if it is intended to assert that a county or a city council, who have power under certain circumstances to make contracts and issue bonds, may disregard these circumstances or conditions entirely, and then issue bonds purporting to be in pursuance of authority, which will be binding and against which no defense can be made, we dissent from it.

"In the Hannibal and St. Joseph Railroad Company vs. Marion County, 36 Mo., 294, we held that when a county, acting under authority which it supposed to be valid, subscribed to the stock of a railroad company in good faith, issued its coupon notes in payment of such subscription and for a series of years voted the stock and paid its coupons, and such notes fell into the hands of innocent and *bona fide* purchasers, it was estopped from asserting that such notes were illegally issued ; and to the same purport see Barrett vs. Schuyler County, 44 Mo., 197.

" The language used in the cases that where the bonds on their face import a compliance with the law under which they were issued, the purchaser is not bound to look further, must be taken as used with respect to the facts in those cases. By an examination it will be seen that in every one of them the qualified voters had voted to confer the authority, and that some mere irregularity had existed as to the manner of giving the notice or casting up the vote. These irregularities could not be expected nor were they necessary to be known to the pur-

chaser. The only matter in which they were concerned was, to know whether the power to issue the bonds existed. The taking and obtaining the majority vote in the case was the pre-requisite—the essential thing which gave the investiture of authority and conferred jurisdiction. The court possessed no power except what it derived from law, and that was only to initiate the proceedings by which the power might be called forth. The real authority comes from the voters at the polls. If they sanctioned the measure and authorized the expenditure, the court could then proceed and carry out their will; otherwise not. Till the votes were taken and a majority of them were cast in favor of the proposition, the court had no authority over the subject matter, and their action was a total nullity. A record which imports absolute verity may always be impeached for want of authority and jurisdiction in the court rendering it; and so may the acts of an agent who has acted without authority where there has been no express or implied ratification by the principal. "

I believe it was agreed by the plaintiff's attorney in the argument of the case that the law as laid down by the above case, in the opinion of Judge Wagner, was correct, and I have no doubt that it is as liberal for the plaintiff as the law permits. Now if we apply the principle there annunciated to the case now under consideration, will the plaintiff be entitled to re-cover? It is said that the real authority to the town trustees to act comes from the votes at the polls. The statute says that no subscription can be made, unless two-thirds of the qualified voters assent thereto at a general or special election. Now what kind of election must be shown? and how must it be shown? is the important question. Will it do to show an election in name, or must an election in fact authorized by law be shown when the assent of the qualified voters can be fairly obtained and with reasonable certainty? I think that a legal election, conducted substantially in the forms of law, is the only one at which the assent of the voters can be legally obtained, and the only one which will confer power on the county, city or town authorities to take stock in a railroad company or

issue bonds in payment thereof. In the present case the record kept by the town trustees shows that an election was ordered; this is all that the record proceedings show about an election except by way of recital. They order the bonds to be printed in *accordance with the order voted on* by the people of Lathrop on the 6th day of November, 1869. It is not ordered that the bonds be printed in accordance with the vote of the people but in accordance with the order voted on, &c. There is nothing to show that the vote of the people had ever been certified to them, or that any poll books had ever been kept at any election, or that any body had ever cast up the votes, and declared the result. There is one witness who swears that he was clerk of the election board, that 16 votes were cast, and all but three or four in favor of the subscription, but he does not state when the election was held or that there were any judges of election, or that any poll books were kept, or that any return of the votes cast had ever been made to any officer or body authorized to declare or decide the result. In the case of Ranney vs. Baeder, 50 Mo., 600, a taxpayer sued the sheriff to recover back a special tax coerced out of him by the sheriff to pay an assessment made against him to pay off the accruing interest on railroad bonds issued by the county, on the ground that said bonds had been issued without authority, and were therefore void. It was shown in the answer that an election had been ordered in conformity to the law controlling elections. That the election was regularly held; that 376 votes were cast for subscription and seven votes against it. The abstract of the votes was certified to the county court, and thereupon the court ordered the stock to be subscribed. This was held to be sufficient to confer the authority to subscribe the stock. It is stated in the opinion "that there must be reasonable certainty shown in the matter of voting and in ordering the subscription, and that the subscription must be made to the road authorized in the power delegated to the agent."

In the case now being considered, it is shown by the evidence that no registration of the qualified voters of the town

had been made before said special election ordered by the town trustees, at which votes could be registered, and that there were persons who were told that they could not vote because they were not registered. In fact the evidence strongly tends to show that no registration of the qualified voters of the town of Lathrop had ever been made and certified and filed as the law directs, or authenticated in any way.

I do not say that it was absolutely necessary to the validity of the election that a special registration should have been made before the election, but this fact, with others, might show that the people, who only could confer the power on the trustees to subscribe the stock and issue the bonds had no opportunity to be heard on the subject.

It is said, however, that it devolves on the defendant to show a want of power in the trustees to issue the bonds, and not on the plaintiff to show that the power had been conferred ; that as there was no plea sworn to, denying the execution of the bonds and coupons, the execution of the bonds was admitted. This is not true in reference to bonds which only purport to have been issued by an agent. The defendant could in such case certainly show the want of authority in the agent to execute the bonds. The only effect of not pleading *non est factum* under oath in any case is, that in such case the plaintiff can read the instrument in evidence without proof of its execution. (Klein vs. Keyes, 17 Mo., 326.) I think in all cases where the bond or other instrument purports to have been issued by delegated power, and when it could not be issued without such delegation of power, it devolves on the plaintiff to show that the power has been conferred before he can recover, and that in a case like the present it should have been shown with reasonable certainty that the authority to issue the bonds had been conferred by an election authorized by law, and that the vote had been preserved by poll books or otherwise, by persons authorized to do so, and that the votes had at least been received and passed on by some persons authorized to pass upon them, and decide whether the election had been carried or whether the voters had assented to the sub-

scription. The plaintiff seems to have relied upon the recitals made in the bonds, and also upon the record of the order for the printing of the bonds made by the trustees of the town. I have already stated that I do not think that these recitals are sufficient evidence to bind the defendant or to show that the power existed in the trustees to execute the bonds. The recitals would doubtless be sufficient to justify an innocent purchaser in receiving the bonds without being charged with notice of any mere irregularities in the conferring or exercise of the power necessary to their issue, and I think that this is the only effect the recitals could have. The plaintiff would still have to show with reasonable certainty that an election was held at which the vote was taken and that it had been taken and the result decided substantially in conformity to the law.

It may be that on another trial of the cause the plaintiff can show that such an election was held and the result decided in favor of the issue of the bonds, in some manner known to the law, and by persons authorized to hold such elections and make such decision. In such case an innocent purchaser would be enabled to recover; but as that is not now before us we need not decide how much evidence would be necessary. All that is said is that these facts must be shown with reasonable certainty, and as the case now stands we think the evidence is not sufficient; but that the evidence strongly tends to show that the election was only an election in name.

I have made no reference to the instructions given or refused in the case. I think that some of the instructions given on the part of the defendant improperly submitted questions of law to the jury; but as the plaintiff is out of court and as from the evidence we cannot say he ought to have recovered, we will leave him to bring his new action.

The other judges concurring, the judgment of non-suit rendered by the Clinton Circuit Court is affirmed.