REUBEN S. ROSE et al. v. SPRINGFIELD & BROOKLINE SPECIAL ROAD DISTRICT et. al.; A. J. EISENMAYER, Appellant.

Division Two, July 30, 1918.

1. **MOTION FOR NEW TRIAL**: Reasons for Ruling: Facts Established. Where the motion for a new trial does not allege that the court improperly found any fact, and designates as the only error that the judgment for defendant was for the wrong party, it will be assumed on appeal from an order granting a new trial that the disputed facts were found in appellant's favor, and the question for determination is one of law, that is, whether on the facts found the judgment was against the law.

2. **ROAD DISTRICT BONDS**: Validity: Power to Issue: Collateral Details. The purchaser of road district bonds, for value before maturity, in the usual course of business, is not required to ascertain if all matters of detail in their issuance were regular.

If the commissioners were empowered to issue them and they appear upon their face to have been issued in conformity with the statute, he is not chargeable with notice of collateral facts as to whether the contract for the public improvement was properly entered into or faithfully performed.

3. ———: ———: Collateral Matters: Plans of Construction, Etc. Those parts of the statute (Sec. 10618, R. S. 1909) requiring the commissioners of a road district to employ an engineer to draw plans, advertise for bids and enter into a contract for the construction of the roads, relate to matters preliminary and collateral in their nature, over which a bona-fide purchaser of the district's bonds has no control, and hence they do not affect their validity.

4. ———: ———: Derelictions of Contractor. The bona-fide purchaser of road district bonds cannot be held responsible for the failure of the contractor, over whom he had no control, with whom he had no contract and was not in privity, to complete the work within the time required by his contract, or to surface the road the agreed depth with crushed stone, or because he abandoned the contract before the work was completed.

5. ———: ———: Certification of Amount. The proviso of Section 10620, Revised Statutes 1909, as amended in 1911, requiring the commissioners of a road district, after its bonds have been issued and attested, to "make out and certify to the county clerk a statement of the amount of the bond issue, and a description of each tract of land within a certain distance of the proposed road, and acknowledge and file the same with the county clerk," can only be complied with after the bonds have been issued, and a failure to comply with it does not affect the validity of the bonds.

Appeal from Greene Circuit Court.—*Hon. Guy D. Kirby*, Judge.

REVERSED AND REMANDED (*with directions*).

*Neville & Gorman, E. D. Merritt, Wm. H. Horine* and *Warren L. White* for appellant.

(1) The purchaser of bonds in good faith need not concern himself with either (a) irregularities in the manner in which the contract for the improvement is executed, or whether any contract is executed, or (b) whether the contract is performed, or how it is performed. All that is required of him is that he ascertain if the road district had authority to issue the bonds. He

is charged with notice of the law under which the bonds are issued and with notice of whether the conditions precedent to the issue of the bonds have been complied with. Catron v. Lafayette County, 106 Mo. 667; Steines v. Franklin County, 48 Mo. 175; Carpenter v. Lathrop, 51 Mo. 492; Smith v. Clark County, 54 Mo. 58; Flagg v. Palmyra, 33 Mo. 450; Heard v. School District, 45 Mo. App. 660; 28 Cyc. 1620, 1621, 1622. This rule applies to all the allegations of the petition except the 6th. (2) (a) The evidence shows that the certificate was made, but (b) Whether made or not, it is not a prerequisite to the issuance of the bonds, but is a step taken subsequent to their issuance, and forms the basis for the levy of the special tax. The purpose of this certificate is to furnish to the county clerk and collector the data on which to make out special tax bills. Instead of being a condition precedent to the issue of the bonds, it is a condition subsequent, performance of which the bondholder might enforce. Sec. 10620, R. S. 1909, amended, Laws 1911, p. 373. (3) The equities of the case are on the side of the defendants. (a) Plaintiffs delayed bringing their action till long after all the irregularities of which they complain had occurred. They allowed the work to be done, the bonds to be issued, registered and sold, and the contractor to be paid before starting their suit. They are estopped now by laches. (b) Plaintiffs and others similarly situated (in behalf of whom they sue) have enjoyed the use of the road built for nearly five years for which they have not paid a cent. Eisenmayer has paid $8,000 for his bonds, on which he has not collected a cent of interest, accepting the bonds in good faith as a valid obligation of the road district. A judgment for the plaintiffs would nullify that obligation.

*Barbour & McDavid* for respondents.

(1) In considering this case we must keep constantly in mind the sections of the statutory law under which the alleged improvement was sought to be carried on. These sections, as construed by our courts, measure

the rights of the parties hereto and are controlling in this case. Secs. 10615-10620, R. S. 1909. (2) These statutes must be read into these so-called bonds, and it is the duty of the court and all parties dealing with them to read and consider in connection therewith the entire article of the statute bearing thereon, and authorizing their execution. Thus it will be readily seen that counsel for appellant have fallen into error in citing as authority cases dealing with bonds of a wholly different character from those involved in this action. Embree v. Road District, 257 Mo. 621; Kirsch v. Braun, 53 N. E. 1085. (3) The bonds involved in this action recite that they are the legal, valid and binding obligation of the district; that provision has been made for the collection of a direct annual tax on all taxable property within the district to pay the interest and principal thereof when due. The appellant proceeds on the theory that these are the bonds of the district and the authorities which he cites and quotes from all deal with ordinary bonds and have no application whatever to these so-called road district bonds. They are not the bonds of the district at all, and Mr. Eisenmayer was charged with notice of their invalidity when he purchased them a year after Hendrix had wholly abandoned his alleged contract. Embree v. Road District, 257 Mo. 593; Kirsch v. Braun, 53 N. E. 1082. (4) Before a valid contract for the construction of a road may be awarded and before valid bonds or tax bills may be issued, the following steps must be taken, as required by our statutes, viz: (a) The commissioners must fix the valuation of each tract of land in the district. (b) The commissioners shall thereupon request the county surveyor to draw up estimates of the costs of any road to be improved. The engineer, under the direction of the commission, shall make estimates of the cost of constructing the road and shall make a report, accompanied by maps and profiles, of the road proposed to be constructed, specifying therein what road or what portion of it should be macadamized, etc., and

separate estimates of the cost of each portion. These estimates of the engineer, together with the maps and profiles, shall be filed with the commissioners and be open to the inspection of all owners of land within the district. Sec. 10615, R. S. 1909. (c) Upon the filing of the engineer's report, maps and profiles, the commissioners shall call a general meeting of the land-owners of the district. At such meeting the commissioners shall submit the engineer's report, containing the estimates, together with the maps and profiles, to the land owners for examination and explanation and shall take a vote of the land-owners on the following propositions: First: Shall the road mentioned in said report be constructed according to any of the plans and out of any of the materials therein set out? Second: What materials shall be used? Third: Shall the cost be paid (1) at once, or (2) fix and determine the number of years, not to exceed twenty, through which the costs shall be distributed. Sec. 10616, R. S. 1909 (Laws 1911, p. 373). (d) If the owners of a majority of the acres of land in the district shall vote in favor of constructing any of the roads in said report mentioned and to charge the cost against the lands in said district, then the commissioners shall make out and sign and acknowledge a report of such action, and file same with the clerk of the county court, and from the filing of said report said public road district shall be a political sub-division of the State, etc. Sec. 10617, R. S. 1909. (e) The commissioners shall then employ an engineer to draw up plans and specifications for the construction of the road and of the materials according to the vote of the land-owners as in Section 10616 directed, and said specifications shall be filed with the commission, and thereupon the commissioners shall, in the name of the road district, enter into a written contract with the lowest and best bidder for the doing of said work according to said specifications. Said contract shall in no case provide for the payment of a sum of money in excess of the estimates voted upon at the land-owners' general meeting plus ten per cent thereof. Sec. 10618, R. S.

1909. (f) When the land-owners in the land-owners' meeting direct the cost of constructing a road shall be distributed through a period of years the board of commissioners shall issue the bonds of the road district in an amount not to exceed the estimates submitted to said meeting, plus ten per cent thereof, and enter into a contract for the construction of said road as directed in Sections 10618 and 10619. Before delivery of said bonds the county clerk shall register them in a suitable book for the purpose. The board of commissioners shall make out and certify to the county clerk a statement of the amount of the bond issue, etc. The county clerk shall thereupon apportion to each tract its share of such bond issue, principal and interest, etc., and shall enter the same in a book, etc., and shall append his certificate thereto as county clerk, and from said date such apportionment shall be a charge against the tracts of land indicated, etc. Sec. 10620, R. S. 1909; Laws 1911, p. 374. (5) The contract with Hendrix, the bonds issued and the tax bills or assessments in question are each and all unauthorized and void for the following reasons: (a) At the request of the commissioners, the county surveyor drew up estimates, maps and profile for constructing a rock road sixteen feet wide. The commissioners submitted these to the landowners at their general meeting and the landowners voted to construct a rock road sixteen feet wide according to those estimates, map and profile made for a sixteen foot road and voted to pay the cost thereof in deferred annual payments. Thereupon, the commissioners were authorized to employ an engineer to draw up plans and specifications for the construction of a rock road sixteen feet wide according to the vote of the landowners (not for a road fourteen feet wide for which no estimate was submitted and for which the landowners did not vote). After the vote of the landowners the commissioners were authorized to make a contract, on competitive bids, for the construction of a sixteen-foot rock road and for no other. Some months thereafter, and without any action whatever by the land-

owners, the commissioners employed the county surveyor to prepare plans and specifications for a fourteen foot road, and of their own volition, and without any authority, they awarded a contract to Hendrix for constructing a road only fourteen feet wide, for which no estimate and no map, profile or plan was ever submitted to or voted on by the landowners. This contract and all subsequent proceedings thereunder are therefore void, and no valid tax bills or bonds based thereon can be issued. The purchaser of these bonds is charged with notice of their invalidity. Sec. 10615, R. S. 1909; Sec. 10616, R. S. 1909; Laws 1911, 373; Sec. 10617, R. S. 1909; Sec. 10618, R. S. 1909; Embree v. Road District, 257 Mo. 593; Kirsch v. Braun, 53 N. E. 1062. (b) This road district became a political sub-division of the State, by reason of the fact that the landowners at their general meeting held on August 31, 1912, voted in favor of constructing a rock road sixteen feet wide in accordance with the engineer's estimates, plans, map and profile therefor, followed by the commissioners' report thereof to the county clerk. Sec. 10617, R. S. 1909. (c) Bonds of the road district can be issued only when authorized by vote of the landowners, and then only for the construction or improvement of a road according to the estimates, map and profile submitted to them at their meeting; and even then, the amount of such bond issue is limited to the amount of the estimates submitted to them for the specific improvement, plus ten per cent. In this case the only estimate, plan, etc., ever submitted to the landowners' meeting and voted on by them was an estimate of $18,000 for the construction of a sixteen-foot road. The bonds were not issued for the construction of that road at all and cannot of course be based on that estimate. The bonds herein involved were issued by the commissioners for the construction of a fourteen-foot road without any estimate therefor having been submitted to the landowners, and without a vote thereon, and the bonds are therefore void. Sec. 10620, R. S. 1909; Laws 1911, p. 374. (d) These bonds were never registered by the county

clerk. The commissioners did not make out and certify to the county clerk a statement of the amount of this bond issue and the land values. The county clerk did not apportion to each tract of land in the district its share of such bond issue, principal and interest, and did not enter the same in a book to be denominated "Bond Tax Record of ——— Road District," or in any book at all, and never appended his certificate thereto as county clerk, so that the tax bills or apportions involved in this action have never as yet become a charge against any of the tracts of land in this district, since they never become a charge except from the date of such certificate of the county clerk. Sec. 10620, R. S. 1909; Laws 1911, p. 374. (6) A special or local assessment is imposed by law upon real property for a public improvement, the extent of the assessment being determined by the special benefits which inure to the assessed property by reason of the improvement made. They are not considered burdens, "but as an equivalent or compensation for the enhanced value which the property derives from the improvement." Upon no other ground can they be for one moment upheld. Embree v. Road District, 257 Mo. 610; Ranney v. Cape Girardeau, 255 Mo. 517; Trust Co. v. Pagenstecher, 221 Mo. 128; Farrar v. St. Louis, 80 Mo. 386; Coates v. Ridenour, 84 Mo. 258. Hence, entire work must be completed before a valid tax bill can be issued. Independence v. Gates, 110 Mo. 385; Hund v. Racliffe, 192 Mo. 330; Wills v. Burbank, 182 Mo. App. 78; Heman v. Loevy, 64 Mo. App. 437. (7) In this case the bids, specifications and contract provided that the work shall be completed within 365 days. Something like two miles of the fourteen-foot road was partially done and the work abandoned. And at the date of this trial, March 24, 1915, more than a year after the time limit in the contract had expired, the remaining six miles of the road had been untouched. The tax bills are void. Heman v. Gillian, 171 Mo. 267; Neill v. Gates, 152 Mo. 592; Barber Co. v. Ridge, 169 Mo. 387; Paving Co. v. Brick Co., 170 Mo. App. 506. The contract having expired

and having been abandoned, it cannot now be extended. Neill v. Gates, 152 Mo. 596; Hund v. Racliffe, 192 Mo. 324; Construction Co. v. Coal Co., 205 Mo. 79. (8) Changing plans and specifications materially after the bids are received without a new advertisement renders tax bills void. In this case the specifications required the road to be wet and rolled until thoroughly compacted and the bidders bid thereon. Thereafter, the commissioners virtually eliminated this item of $2000 or more from the specifications and awarded the contract to Hendrix and added $10 per mile to his compensation. No re-advertisement for bids was made. Johnson offered to do the work on that basis for $3000 less than the amount the commissioners agreed to pay Hendrix. Maryville v. Lippman, 151 Mo. App. 450; Poplar Bluff v. Bacon, 144 Mo. App. 476; Independence v. Knoepker, 134 Mo. App. 606; Gratz v. Kirkwood, 182 Mo. App. 597; Burress v. Spring, 143 Mo. App. 694. (9) Standing by and seeing a public improvement made with knowledge of all the facts, does not prevent a property owner from maintaining a suit to cancel tax bills after the improvement is completed, under a void contract Verdin v. St. Louis, 131 Mo. 98; Perkinson v. Hoolan, 182 Mo. 189; Collier Estate v. Paving Co., 180 Mo. 390; Wheeler v. Poplar Bluff, 149 Mo. 46; McCormick v. Moore, 134 Mo. App. 680; Cushing v. Bullock, 151 Mo. App. 281. No one can be estopped by an act that is illegal and void. Nichols v. Bank, 55 Mo. App. 81; Bank v. Woesten, 68 Mo. App. 137; Cox v. Mignery & Co., 126 Mo. App. 669. The lien of a void tax bill issued for an improvement cannot be enforced against the property on the ground that the property owner subsequently made use of the improvement. Neill v. Trust Co., 89 Mo. App. 644.

WALKER, P. J.—This is a suit in equity, instituted the circuit court of Greene County, to restrain the collection of tax bills, and to declare invalid and cancel certain road bonds for the payment of which the tax bills were issued. Upon a hearing, there was a judgment for

appellant. Respondents moved for a new trial. From the interlocutory order granting same an appeal has been perfected to this court.

Stripped of formal verbiage, the specific allegations of the petition are as follows:

1. That the plans for the road adopted at the landowners' meeting called for a road sixteen feet wide, while the specifications on which the bids were made and which were embraced in the contract called for a road fourteen feet wide.

2. That the specifications provided for rolling the road, while the contract made omitted the rolling.

3. That the work was not completed within the time required by the contract.

4. That the contract was made in the name of the commissioners of the road district instead of the name of the district.

5. That the bond given by the contractor for the faithful performance of the contract did not run to the road district but to the commissioners.

6. That the commissioners failed to certify to the county clerk the amount of the bond issue.

7. That the contract was not performed according to the specifications in that the crushed stone was spread on the road to a depth of only three inches, while the specifications called for an average depth of 6½ inches.

8. That the contractor abandoned the work before its completion.

The separate answer of the sole appellant, Eisenmayer, was first a general denial. This was followed by admissions as to the organization of the road district and the appointment, qualifications and acts of the commissioners. To these was added a specific denial that the commissioners had failed to execute, acknowledge and file with the county clerk a certificate showing the issue of the bonds, the amount of same, the time they were to run, the rate of interest, and the date of their maturity; and a further denial that the certificate made by the commissioners to the county clerk did not contain

a description of the land chargeable with the taxes levied for the payment of the bonds, together with the relative locations of the land and the road to be constructed. On the contrary, it is affirmatively alleged that said certificate was made and filed as required by law, and that the issue of the bonds and the other requirements of the statute in regard thereto were complied with. To this answer was interposed a general denial.

The admissions of the parties and the testimony of witnesses disclose that the respondents brought this action as owners of land subject to taxation in the Springfield & Brookline Road District, one of the defendants below, and being the district in which the road bonds in controversy were issued. Of the other defendants, W. B. Cloud was, during a part of the time of these proceedings, county clerk of Greene County, until he was succeeded by the defendant, J. L. Likins, who was thereafter and is now such clerk. J. E. Potter, another defendant, is the collector of the revenue of said county. All of the other defendants, except A. J. Eisenmayer, who alone appeals, were during some part of the transaction out of which this suit arises, or are now, commissioners of said road district. Eisenmayer, the appellant, is the owner of a part of the bonds sought to be declared invalid. This district was established by an order of the county court of Greene County, April 10, 1912, under Article 7, Chapter 102, Revised Statutes 1909, and the amendments thereto. Upon the appointment of the commissioners for the road district by the county court, they employed, in conformity with Section 10615, Revised Statutes 1909, the county surveyor of Greene County to prepare, and he did so prepare in July, 1912, plans, specifications, maps and profiles in which provision was made for the construction of a rock road sixteen feet in width. In these plans it was provided, among other things, that the rock used in the construction of the road was to be harrowed and rolled until the surface had been rendered smooth. Upon the filing of the report of the county surveyor, the commissioners called a general meeting of

the landowners of said district, under Section 10616, Revised Statutes 1909, as amended, Laws 1911, p. 373, and the plans, as submitted, were adopted. After compliance with other requirements of the statute, the commissioners requested bids for the construction of the road, in conformity with the plans, etc., adopted by the landowners, except that it was proposed to let the contract for a road fourteen feet in width, instead of sixteen feet. Upon an examination of the bids, it appeared that the one submitted by D. G. Hendrix was the lowest. He was, thereupon, awarded the contract. Before the same was signed, it was discovered that his bid did not conform to the plans, in that it omitted the requirement that the rock when placed on the road was to be rolled. Upon discovering this omission, the commissioners refused to award the contract to him, and the difference was adjusted by their agreeing to furnish him with a roller and to allow him $10 per mile in addition to his bid for the rolling. This modification was made by the commissioners and the contractor alone, and the contract was thereupon, on the 25th day of January, 1913, signed, and the work commenced. This contract called for the construction of eight miles of road. About two miles of the same were constructed as required, when, in May, 1913, the contractor abandoned the work. About the time of this abandonment, acting under Section 10620, Revised Statutes 1909, as amended by Laws 1911, p. 374, the commissioners issued bonds of the district for the payment of the cost of improving the road, of the total par value of $18,000. On May 14, 1914, the commissioners sold a portion of these bonds of the par value of $8000 to the appellant, Eisenmayer, and out of the proceeds, paid the contractor $4962.12 in satisfaction of his account for the work claimed to have been performed by him under his contract. The bonds not sold, of the par value of $10,000, are in the hands of the commissioners. Under the contract, Hendrix was required to complete the same within 365 days after January 25, 1913. Upon his failure so to do, he was to be subjected to a penalty of five dollars per day for

each day's failure thereafter, which was to be deducted from the amount due him. So far as the formal compliance with the law is concerned regulating the issuance of bonds of this character, there is no contention. They indicate on their face that they are the bonds of the road district, to be paid by the annual levy and collection of a direct tax upon all the taxable property in the district, and that provision for such revenues had been made before their issue.

It was admitted that the taxes have been assessed against the respective properties of these plaintiffs on account of building this road, and the bonds purporting to have been issued on account thereof, in the amount set forth in the petition for the year 1913 and for the year 1914; and that taxes were extended in a similar manner for the year 1913, for a similar purpose, against the other lands similarly situated.

It was also admitted that the Collector of the Revenue of Greene County will proceed to enforce the taxes if not restrained by order of court in this proceeding.

I. The only matters before the court on the motion for new trial were the admission and rejection of evidence, and that the judgment was for the wrong party. The motion does not allege that the court improperly found any fact or designate any other error. The judgment of the court being for the defendants below, the disputed facts must have been found in their favor. The question on a motion for a new trial, excepting as to the admission and exclusion of evidence, was, therefore, one of law, i. e. whether on the facts as found, the judgment was against the law. In sustaining the motion for a new trial, the order for which is general in its terms, the court, therefore, must have concluded that on the facts as found, the judgment for defendants could not stand.

**Matters for Consideration.**

We are sustained in this conclusion as to the reasons for the trial court's ruling on the motion for a new

trial, by the petition. The analysis of same, above set forth, shows that its 1st, 2nd, 4th and 5th allegations relate to irregularities in the execution of the contract with Hendrix; that its 3rd, 7th and 8th relate to irregularities in the perfomance of the contract by him; and the 6th relates to the certificate of the amount of the bond issue which the commissioners are required to make to the county clerk as a basis for computing the taxes to be levied for the purpose of paying off the bonds.

In determining the validity of the bonds in controversy the purchaser of same for value before maturity, in the usual course of business, need not concern himself with matters of detail as to their issuance.

Validity of Bonds. What he is required to do is to ascertain, at his peril, if the commissioners were clothed with power to issue them. When issued, he has a right to trust to their decision as to the regularity of the proceedings. Familiarity with the statute authorizing the issue being a prerequisite, if the bonds show upon their face to have been issued in conformity therewith, the purchaser will not be chargeable with notice of collateral facts as to whether the contract has been properly entered into or fully and faithfully performed. We so held in Catron v. Lafayette Co., 106 Mo. 659.

In Steines v. Franklin County, 48 Mo. 167, a suit in equity to cancel bonds issued by the county court for the improvement of roads, in which misconduct on the part of the county officers and the contractor was alleged as a ground for canceling the bonds, we said: "What has been said in argument as to the bad faith and dishonest conduct of the officers and contractors can have no weight against the defendants, who innocently invested their money, provided the authority to issue the bonds actually existed. . . . The folly of county officers, and the arrant knavery of contractors and speculators, are considerations which might have application in a proceeding to restrain the issue or negotiation of the bonds, but ought not to be allowed

to authorize their repudiation when they have come into the possession of bona-fide holders.''

In Carpenter v. Lathrop, 51 Mo. 483, a suit on the interest coupons of bonds issued by the town of Lathrop in aid of a railroad, as a defense the town urged that the railroad company had not complied with its duties in completing the road in the time agreed, or in building a depot at a certain place, we held that these defenses were not available against the bona-fide holder of the bonds, employing this language: ''It is not necessary to examine the question whether the railroad company [in whose aid the bonds were issued] complied with its duties under the subscription of stock, in completing the road in the time named, or in erecting a depot at the place named, or any of these collateral facts. These are matters that need not concern the holder of a bond or coupon purchased in good faith. If the power was conferred upon the trustees of the town to take the stock and execute the bonds, any irregularity in the exercise of the power conferred . . . could not be relied on to defeat the bonds in a collateral way.'' The bonds were held invalid because there was no proof that an election had been held, and that the voters thereat had authorized the issue of the bonds.

In Heard v. School District, 45 Mo. App. 660, it was held that the authority to issue municipal bonds is conferred by law and by the decision of the voters, and when an election has been held and the will of the voters ascertained, the bonds are valid in the hands of a bona-fide purchaser, notwithstanding irregularities in the proceedings.

In the present case, the appellant Eisenmayer is a bona-fide holder of $8000 worth of the bonds. He paid full value for them, took them before maturity, and he was without knowledge of any irregularities in their issuance. Of what then, is he bound to take notice?

Much has been admitted in regard to the regularity of the issuance of the bonds. Disregarding for the moment these admissions, the statute will furnish the

answer as to the measure of the bondholders' duties. The review of same is therefore pertinent.

An absence of allegations from the petition of any irregularities in the organization of the road district renders a consideration of Sections 10611 to 10614, Revised Statutes 1909, relative thereto, unnecessary. Nor is any point raised as to a failure of the commissioners to comply with Section 10615 in regard to the valuation of the tracts of land to be effected by the proceeding. That the required landholders' meeting was held after proper notice, and that the matters there to be determined were submitted, voted upon, and the result reported to the county clerk, as required by Sections 10616 and 10617, are shown by the record. Section 10618 prescribing the duties of the commissioners in employing an engineer to draw plans, etc., advertise for bids, and enter into a contract for the construction of the road, are, from their nature, preliminary and collateral, and as a consequence, are matters over which the bondholder has no control; and, as affecting the validity of the bonds, they are of no concern to him, as we have held in the cases cited. Irregularities in the performance of the duties required by these sections are consequently not such as will affect the validity of the bonds in the hands of a holder, as in the case at bar. They are, therefore, such as are included in the 1st, 2nd, 4th and 5th allegations of the petition, as shown by the analysis we have made of same. Section 10619, providing for the payment of tax bills, and when costs are to be paid, has no application to bonds issued under the conditions here existing.

The 3rd, 7th and 8th allegations of the petition relate to the performance of the contract by Hendrix, the contractor. The latter was not made a party to the suit. The bondholder cannot be held responsible for derelictions of the contractor, over whom he has no control, with whom he has no contract and is not in privity. The district makes a contract with the bondholder that it will pay the bonds at maturity; and with the contractor it makes an entirely different contract.

If the contractor is derelict, the district has its remedy by suit on his bond, or by withholding payments; but the bondholder has no power to interfere, even though he knows the contractor is violating his agreement. These matters, therefore, are, under the authorities cited above, irrelevant to the question of the validity of the bonds.

Section 10620, as amended, Laws 1911, p. 374, provides that when the landowners direct, the cost of the contemplated improvement shall be distributed over a number of years; that the commissioners shall issue bonds as thereafter directed for the payment of the expense to be incurred; and that the bonds of the district shall be issued for the length of time that has been directed, for an amount not exceeding the estimated expense of the construction, plus ten per cent in excess of same; and that a contract shall be entered into 'as provided in Sections 10618 and 10619; that the bonds shall run in the name of the road district, shall bear not exceeding six per cent interest, and shall be payable as directed, with the proviso that they may be paid at any time after one year on call, and how they shall be signed and attested. The section further prescribes how the bonds shall be sold, and what shall be done with the money raised therefrom. This is followed by the provision that "the board of commissioners shall make out and certify to the county clerk a statement of the amount of the bond issue, and a description of each tract of land, within a certain distance of the proposed road, etc., and acknowledge and file same with the county clerk." It is urged that the portion of the section quoted has not been complied with, no question being raised as to any other part of same.

After a careful examination of the testimony, we have reached the conclusion that there is ample proof of a compliance by the commissioners with the requirements of Section 10620 quoted. If this did not affirmatively appear, the nature of the duty enjoined is such that it cannot constitute a condition precedent to the issuance of the bonds. The certificate is required to

state the amount of the bonds that have been issued; involving, as this requirement does, the statement of a past transaction, it can only be made after the bonds have been issued. No power, therefore, as to the issuance of the bonds could arise from the making of the certificate, for the evident reason that at the time the same is required to be made, the bonds have already been issued. In our opinion, therefore, the contention made in the 6th allegation of the petition, as analyzed, as to the effect of the failure of the commissioners to make the certificate does not affect the validity of the bonds.

From all of which it follows that the trial court erred in granting the new trial. The order for same is, therefore, reversed, and the cause is remanded with directions that the original finding of the trial court be reinstated and that a judgment be entered in conformity with same. All concur.